## The Cleveland and Toledo R. R. Company v. John L. Perkins.

*Damages: Contract: Delay.* Where cattle were delivered to a railroad company for immediate shipment, but a written contract was executed by them two days afterwards: in an action for damages for unreasonable delay;

   *Held,* That the written contract would be the measure of the obligation of the parties from the time it was given, but that it would not merge any liability the company might have incurred by unreasonable delay previously; there being nothing in its terms to indicate such an intention.

*Written contract in duplicate: Evidence.* Proof of the written contract on the part of the plaintiff below was objected to, because it appeared that a duplicate was signed and left with the company at the time, and no notice had been served on the company to produce this duplicate on the trial, but it was held that the plaintiff might rely on his own copy, and was under no obligation to call for the other.

*Market price: Experts: Newspaper quotations.* It is competent for witnesses to testify as to their knowledge of the market price of cattle derived from the newspapers.

*Damages to cattle: Contract: Transfer.* One car load of the cattle was transferred to plaintiff by another person, after they were received by the defendants, but before the written contract was entered into. The company claimed they were liable for any delay to this car load only from the time the transfer was made on their books. The Circuit Judge charged the jury that the company was liable from the time they had actual notice of the transfer, and this charge was held to be correct.

         *Heard July 11th. Decided October 7th.*

Error to Lenawee Circuit.

The defendant in error sued the Railroad Company to recover damages caused by an alleged unreasonable delay on the transportation of cattle, received by them at Toledo, to be transferred to Cleveland; and destined to New York.

The jury rendered a verdict for plaintiff for $555.

The cattle were received on the 12th of February. On the 14th of February following, duplicate contracts were executed for their transportation, and one was delivered to Perkins; each party signing his own contract; but the cattle were not forwarded until the 16th of February.

Numerous exceptions were taken at the trial: the principal of which are stated in the opinion of the court.

THE C. AND T. R. R. CO. *v.* PERKINS.

*C. A. Stacy,* for plaintiff in error.

1. The part of the contract, signed by the plaintiff should have been proved, or its absence accounted for.

Though the witness swore the papers were duplicates; yet it is evident, from the testimony, that they were not what in law is called "duplicate originals," not being both signed by both parties.

2. The plaintiff had no right to introduce testimony showing delay before the execution of the written contract; as, by its terms, all previous bargains and understandings between the parties were merged in the writing.

In regard to one car load of the stock, the testimony shows that the transfer of the property on the books of the Company, and the notice to the company, was not made until the time of the signing and delivery of the contract.

3. The plaintiff should not have been permitted to have proved the effect of all the delay in this case, more than if the cattle had left Toledo on Sunday night.

The defendant was only liable for the delay after Tuesday morning; the date of signing the contract the plaintiff should only have been permitted to have proved.

By the decision of our Supreme Court— *6 Mich. 243* — the right of the carrier to limit his liability by contract is not only recognized, but it is declared to be a right, beneficial to the individual shipping his property.

In this case there could be no implied receipt or agreement to carry, because, by the usage of the company known to the plaintiff, the company never shipped cattle except under a written agreement, signed by the shipper as well as the company.

The cattle remained at Toledo awaiting shipment till the contract was signed. In that case, the Rail Road Company are not liable as common carriers.— *7 Mich. 515.*

The liability of the company, if any, was in refusing to receive the cattle as carriers, and not for neglect as carriers before contract, or except upon the written contract itself.

4. The admission of witnesses swearing from recollection as to the market reports in newspapers, is clearly error.— *1 Greenlf. Ev.* §§ *99, 124; 9 Cush. 36, 40; 8 Met. 436; 3 Gray, 374; 16 Ill. 558.*

The decision in the case in *14 Mich.* though extending the rule beyond what it had been previously held at common law, yet does not, as I understand, go so far as to make parol evidence of witnesses evidence of published or newspaper market reports.— *14 Mich. 497.*

*A. L. Millard,* for defendant in error.

1. The Rail Road Company are liable for any damages resulting in delay to transport the cattle previous to signing the contract.

There was an implied contract between the parties before the written contract was made. It arose upon the receipt of the cattle by the defendant, as a common carrier, to be transported to Cleveland.

True, this was merged in the written contract, from the time the latter was made; but when a breach of the implied contract had occurred before the execution of the written contract, the damages resulting from that breach were not waived by the written contract, nor were they merged.

The written contract was a new contract, or a modification of the original, implied contract, entered into after the parties had entered upon the execution of the latter. It had no reference to the past, but only to the future. There was in it no release or waiver of any damages already incurred.

2. The objection to the testimony of the witnesses, the plaintiff and Albert Russell, as to the condition of the New York market, was not well taken.

The defendant insisted that they could not testify as to this except upon personal knowledge.

The sources of information which they disclosed were the reports of drovers and salesmen engaged in the business;

newspaper reports of the market, and the personal knowledge of one of the witnesses, of what the market was the week previous.

The Circuit Court allowed them to testify from knowledge derived from these sources, as to what the market was at the time the cattle would have arrived there but for the delays complained of. In this we think there was no error.—*14 Mich. 489.*

3. The refusal of the court to charge that the plaintiff could not recover damages for the detention of the stock belonging originally to McDonough, until after the written transfer of the stock on the books of the company to the plaintiff, was not erroneous.

The court charged that he could not recover damages for such detention until the company had notice of the transfer. There was no error in this, at least none of which the plaintiffs in error can complain.

The whole interest in the cattle was in the plaintiff below from the time of the transfer, and the loss from the delay was his. It was wholly immaterial, so far as his right of action was concerned whether the delay occurred before or after the transfer was entered on the books of the company, or whether that was ever done or not.

Cooley Ch. J.

Of the exceptions appearing in the record, we shall notice those only which are relied upon in the brief for the plaintiffs in error.

*First:* That the Circuit Judge erred in allowing the contract held by Perkins to be read in evidence, before the duplicate, in the hands of the Rail Road Company, had been produced, or its absence accounted for. This we think not well taken. The contract signed by the company was delivered to Perkins as the evidence of their undertaking and liability; and there is no occasion for him, when he is seeking to enforce their obligation, to call for the production of

the corresponding evidence which he has put into their hands to be used, when needful, against him.   If proof of the duplicate could have been important to the defendants, they were at liberty to make use of it, and, as the action was based on the contract, it is to be presumed their evidence of it was present at the trial; but its production was no necessary part of the plaintiff's case.

*Second:* That proof of delay on the part of the Rail Road Company, before the signing of the written contract, was inadmissible.   This objection is on the theory that the written contract merges all prior negotiations, as well as the implied contract which the law would raise from the reception of the cattle for transportation.   Undoubtedly the writing is to be the measure of the company's liability from the time it was given; but there is nothing in its terms which purports to waive any claim to damages which might have accrued in favor of Perkins previously.   When the company received the cattle for transportation, they impliedly undertook to transport them safely, and without unreasonable and unnecessary delay; and this implied contract remained in force until the parties substituted a written one, and it must measure the rights of the parties up to that time.   To hold that, because the company were in the practice of carrying only under written contracts, they might delay indefinitely, without liability, after the receipt of the cattle, until they saw fit to give a written contract, would be to advance a doctrine without basis in reason or justice. The custom does not preclude implied or oral contracts, for the parties may vary from it in any case; nor does it make the written contract, when given, relate back to the reception of the cattle: its effect is only to govern the obligations of the parties from the time of its execution.

.   We are referred to the case of *M. S. and N. I. R. R. Co. v. Shurtz,* 7 *Mich. 515,* as authority that, up to the execution of the writing, the cattle were simply in the hands of the Company, awaiting shipment.   But the two

cases differ entirely in their material facts. In *Shurtz's* case the property was stored with the Company, awaiting the orders of the owner for transportation; but in the case at bar, the property was delivered to the Company for immediate transportation; and whatever delay occurred, whether reasonable or unreasonable, was against his will.

*Third:* That the court erred in allowing the witnesses to testify to a knowledge of the New York market derived from the newspapers. This objection is met by the decision of this court in *Sisson v. Cleveland and Toledo R. R. Co. 14 Mich. 497.* That case does not require that the newspapers themselves should be put in evidence, but it recognizes them as a proper source of information to which persons interested in the markets may resort; and there is no reason why they should not testify the result of their examinations, as they might the result of inquiries in the market places.

These remarks appear to cover the ground taken in the brief of the plaintiff in error.

Something is said about one car load of cattle transferred to Perkins by another person after they had been received at Toledo; and in regard to which, the judge was asked to charge the jury that the Company was not liable for any delay until the transfer was actually made on their books. This he declined, but did charge them that the Company was not liable until actual notice was received of the transfer. The brief assumes that notice of the transfer was not given to the Company until the written contract was entered into; but the record shows that the written transfer was made on the Company's books the day before. The liability of the Company, however, could not depend on the plaintiff's ownership appearing by their books: if they had notice of it, that would be sufficient.

We discover no error in the record, and the judgment must be affirmed.

The other Justices concurred.