## WILLIAM PETER v. JAMES C. THICKSTUN.

*Claim for goods sold—Cross-examination—Newspaper quotations—" Reasonable time"—Constructive receipt in full—Objections to payment tendered—Financial duress.*

Where the plaintiff in an action for the price of merchandise has been examined as to the details of the transactions between the parties to the suit, it is not error to allow him to be cross-examined as to the extent, kind and localities of his business if it tends to show his opportunity to know the facts he has testified to, and the probability as to the correctness of his statements.

Local newspaper quotations as to the price of merchandise at the point of consignment are admissible where its value is a material fact in the case; as where a claim for the price charged was met by the defence that the value had declined. But evidence of the rate at which the claimant sold other such merchandise at the time when that in suit arrived at its destination, is not admissible.

"Reasonable time" within which to object to an account rendered is a question for a jury and to be considered in connection with the circumstances of the case.

If a vendor accepts, negotiates and cashes a cheque which purports on its face to be in full payment for the merchandise sold, he, in effect, receipts in full for the price.

If one who contracts for goods to be delivered at a given time receives them as the goods bargained for, without objection, though not delivered until long afterwards, he is liable for the contract price.

An objection to payment tendered for not being as much as was due, or not what the goods cost, is enough to entitle the vendor to contest the correctness of the account.

Where one who contracts to furnish goods within a week does not do so for more than a month, and the goods, when finally furnished, are neither delivered nor accepted under the contract, the purchaser cannot be held for the contract price but only for the market value at the time of delivery.

The purchaser of goods sent a draft for less than the price demanded, and the vendor accepted it, but afterwards claimed that it was not in full payment. *Held* error to permit the jury to consider whether the acceptance was not made under financial duress, there being no evidence as to the vendor's financial condition.

Error to Lapeer.  (Stickney, J.)    Oct. 16.—Oct. 24.

ASSUMPSIT.  Plaintiff brings error.    Reversed.

*Geer & Williams* for appellant, cited as to acceptance of a draft offered in full payment, *McGlynn v. Billings* 16 Vt. 329 and *Davenport v. Wheeler* 7 Cow. 231.

*Moore & Bentley* for appellee, cited in support of the admission of testimony as to the scope of plaintiff's business, *Wilbur v. Flood* 16 Mich. 43; Starkie's Ev. (9th ed.) 34; a memorandum on the face of a cheque to the effect that it is in full payment is not a part of the cheque, but may be treated as made for the purchaser's convenience: *Buhl v. Trowbridge* 42 Mich. 44; if one of the parties has derived any advantage from a partial performance by the other, he cannot hold the benefit of this and rescind as to the residue on the ground of the other's non-performance: 2 Pars. Conts. (5th ed.) 679; *Hunt v. Silk* 5 East 449; *Hub-*

*bardston Lumber Co. v. Bates* 31 Mich. 168–9; *Curran v. Rogers* 35 Mich. 226; *Gillett v. Bowman* 43 Mich. 480; 3 Wait's A. & D. 483.

SHERWOOD, J. The plaintiff sued the defendant in assumpsit to recover for a quantity of mill-feed sold and delivered. Plea, general issue, and notice of set-off.

On the trial, the account of the plaintiff, amounting to $43.54, was admitted by the defendant to be correct, but he claimed that on the 9th day of May, 1881, he sold to the plaintiff two car-loads of shingles, to be delivered on the cars at Toledo, at $3.50 per thousand, as soon as he could get the cars for that purpose; and that on the 11th day of June following he forwarded the two car-loads of shingles, and when they arrived in Toledo caused the same to be delivered to the plaintiff, and that defendant owed him a balance of $30 therefor, which constituted the claim set off. The plaintiff, however, insisted that, by the terms of the contract made in May, the defendant was to deliver the two car-loads of shingles to him on the cars in Toledo within a week, and he neglected to make such delivery; that between the date of the making of the contract and the time the shingles arrived in Toledo the price depreciated twenty cents per thousand, and that he did not receive the shingles upon the contract, but their receipt and purchase by him was an independent transaction, and that he accounted to the defendant for the same as such.

Thus it will be seen the parties fail to agree as to the time when the shingles were to be shipped or delivered under the contract, Thickstun claiming he was to forward them as soon as he could get cars for the purpose, and Peter says they were to be delivered to him within a week from the time of making the contract.

The jury found with the defendant, allowed the set-off of $30 and returned their verdict for the balance, and plaintiff brings error.

The evidence shows that the shingles were shipped from Welsh station, in Michigan, about the 11th of June, direct-

ed to the defendant as consignee, and that they arrived in Toledo some time between the 20th and 26th days of June. The defendant claims, and his testimony tended to show, that on or about the 14th day of June he sent an invoice of the shingles, dated June 11th, to Mr. Peter, enclosed in a letter directing the freight agent at Toledo to deliver the shingles to Mr. Peter. The invoice is as follows:

                                              "June 11, '81.

Wm. Peter:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 75 M. shingles, @ 3.50, car 1997, | - | - | - | 262 | 50 |
| 75 " " " " D 324 | - | - | | 262 | 50 |

                                                525 00

Billed J. C. Thickstun, Toledo, Ohio; order enclosed."

And that he sent these shingles as soon as he could obtain the cars to transport them.

The plaintiff denies ever having received this letter inclosing the invoice, and says that the first information he received of the shingles being on the cars for him came from the freight agent at Toledo, and after unloading the cars he sent the defendant a letter, dated June 27th, informing him of the fact, and that he was then paying $3.30 for shingles, with 2 per cent. off for cash, which left them at $3.24 per thousand, and inclosed a check for the amount they came to at that price. The check was as follows:

"$407.35.                         TOLEDO, O., June 27th, 1881.

*Second National Bank of Detroit, Mich.:*

Pay to J. C. Thickstun or order four hundred and seven and 35-100ths dollars. Payment in full for shingles shipped to me in cars 1997 D and 324 D and finished unloading June 27th, '81.

                                       WILLIAM PETER."

This check was endorsed by the defendant, and the money was received by him thereon.

The defendant testifies that upon the receipt of this letter and check he sent the plaintiff a letter saying that the statement of account and check were not right; that he was dissatisfied; also that he saw the plaintiff about ten days after this, and stated to him the same he had written in the

letter.    Plaintiff denies ever having received the letter, and
further says, in the conversation had afterwards with de-
fendant, and also the defendant swore on the trial before
the justice, that he was by the contract to deliver the shin-
gles within a week, but failed because he could not get the
cars.

The first six assignments of error relate to the testimony
given by plaintiff upon his cross-examination, showing the
extent, kind and places of plaintiff's business.    This testi-
mony was properly received.    Upon his direct examination
he had given to some extent the details of the transactions
between the parties.    The testimony objected to tended to
show his opportunities to know the facts he had testified to,
and the probabilities of the correctness of his statements.
*Sager v. Tupper* 38 Mich. 258.

The seventh and eighth assignments relate to the admissi-
bility of the newspaper quotation of the market value of
the shingles in the city of Toledo on the 27th of June and
the 27th of July, 1881.    Toledo was the market to which
the shingles were consigned, and their value there was
a material fact in the case.    We think the testimony was
properly received under the previous rulings of this Court.
*Sisson v. C. & T. R. R. Co.* 14 Mich. 497; *Cleveland &
Toledo R. R. Co. v. Perkins* 17 Mich. 301.

The 20th assignment of error must be sustained.    What
the defendant sold other shingles for at the time these ar-
rived in Toledo, was not proper evidence of the value of
the latter.

The remaining exceptions relate to the charge as given,
and to the court's refusal to charge.    The substance of the
plaintiff's first three requests were given in the charge.    They
relate to the effect of defendant's failing to make timely
objection to the statement of account of the shingles as ren-
dered by the plaintiff, but this effect was completely con-
trolled by the statements of the court that the defendant
made proper and timely objection.    This was erroneous.
Whether he did so or not within a reasonable time, under

the circumstances of this case, should have been submitted to the jury. *Druse v. Wheeler* 26 Mich. 189.

The plaintiff's 4th and 6th requests, and the 16th and 18th assignments of error are untenable, and the rulings of the circuit judge were correct.

The plaintiff's 5th request should have been given. There were in the testimony sufficient facts upon which to base the same; and upon the facts assumed in the request it states the law correctly, and the refusal to charge the request was error.

That part of the charge included in the plaintiff's 19th assignment of error was erroneously given.* The record

---

* The plaintiff requested the court to charge the jury in writing as follows:

*First.* If the jury find from the evidence in this case that the plaintiff, Peter, on the twenty-seventh day of June, 1881, made and rendered a statement of an account for two car-loads of shingles, containing 149½ thousand, to the defendant, James C. Thickstun, at $3.30 per thousand, and at the same time sent him his check or draft on the Second National Bank of Detroit for $407.35, in full payment for the same, and the said defendant kept and obtained the payment on the said check, and made no objection to the correctness of the account rendered and the payment therefor for an unreasonable [within a reasonable] length of time, then it became an account stated.

*Second.* If the jury shall find from the evidence in this case that the plaintiff rendered to the defendant an account showing the number of thousand shingles received, and the price paid therefor, inclosed him a check or draft as and for full payment and settlement for said shingles, then it became and was the duty of the defendant to make objection to the correctness of the account within a reasonable length of time; and if the jury find that the defendant failed or neglected to make such objection within a reasonable time, under all the circumstances of the case, then the jury should consider such neglect or omission to notify, an admission upon the part of the defendant that he had assented to, and was satisfied with, the correctness of the account as rendered.

*Third.* If the jury find that the defendant received the account and check in payment for the shingles on the twenty-eighth day of June, 1881, and made no objection to the correctness of the account until November following, then, under the proofs in this case, it was an admission on his part that it was correct.

*Fourth.* If the jury find that Peter sent to Thickstun, June 27th, 1881, a check for $407.35, on which was written "payment in full for shingles shipped to me in cars 1997 D and 324 D," and finished unloading June 27th, 1881 and that Thickstun negotiated said check and drew the $407.35, this would have the same effect as a receipt in full given by Thickstun to Peter.

*Fifth.* If the jury find from the evidence in this case that Thickstun, on the ninth day of May, 1881, sold to Peter two car-loads of shingles, at $3.50 per thousand, to be shipped within one week, and that said shingles were not shipped by Thickstun for more than a month after the contract was made, and were not delivered to Peter, and were not accepted

does not disclose evidence sufficient to support the charge. There was no evidence in the case showing the financial

---

by him under a contract, then Peter would not be chargeable for the contract price of the shingles, but for their market value at the time they were delivered to him.

*Sixth.* That, under the proofs in this case, the plaintiff is entitled to recover the amount of his account, $43.54, and interest at seven per cent. on the same since the rendition thereof to the defendant.

The circuit judge charged the jury as follows, error being assigned upon the portions enclosed in brackets, the accompanying number indicating the assignment.

*Gentlemen of the Jury:* This is an action, termed in the law, assumpsit, brought by the plaintiff against the defendant for the purpose of recovering the value of a certain quantity of bran and middlings sold by the plaintiff to the defendant, under date of November 23, '81, or there abouts. If there were no other items in the case, the plaintiff would be entitled to a verdict at your hands for the $43.54, the amount of the bran and middlings. On the part of the defendant, he insists that there is a matter due him from Mr. Peter, growing out of a prior deal in reference to the shipping of a couple of car-loads of shingles from his place in Otsego, or north, to Toledo, to the plaintiff in this suit. And it is necessary in this case, under the proofs, for you to investigate somewhat the facts growing out of that transaction to determine whether, under the law as I shall give it to you, there is an offset to be applied to this $43.54 or not.

It appears that some time in May, 1881, the parties got together and negotiated, the one with the other, for two car-loads of shingles, at the price of $3.50 per thousand delivered on board the cars at Toledo, the residence of the plaintiff in this suit. On the part of the plaintiff it is contended, and some proof has been offered upon that branch of the case showing, that the shingles were to be delivered to the plaintiff in this suit, Mr. Peter, within a week at the outside. On the part of the defendant it is claimed, and some proof has been offered upon that point, that he was to ship the two car-loads of shingles whenever he could get cars to ship them,—whenever he could get the necessary facilities to ship the plaintiff in this suit the two car-loads of shingles, at the price of $3.50 a thousand. That is the claim on the part of the plaintiff, and the claim on the part of defendant in reference to the shingle contract. Afterwards, it is claimed on the part of the defendant that he sent this order for the two car-loads of shingles north to his mill, on the ninth of May, to be filled as soon as he could get cars to ship them from that place to Toledo; that nothing was said, no communication was made between the parties in reference to the shingles, from that time until the shingles were shipped by the defendant to the plaintiff and received at Toledo, which was some time in June,—the tenth or eleventh of June, I think, from the proofs in the case. There is no dispute between the parties in reference to that date, and that you will find from the proofs. That as soon as the shingles were shipped, or as soon as the defendant in this suit was notified by his foreman that the shingles were shipped, he sent an invoice of the shingles to the plaintiff, a statement of the account existing between them in consequence of the shipping of the shingles, and also an order on the agent,—the railroad agent at Toledo,—directing him to deliver the shingles over to Mr. Peter, the plaintiff in this suit, the shingles having been shipped in the name of the defendant, as consignor and consignee; that as soon as Mr. Peter was notified of the receipt of the shingles at Toledo, he received them and took them into his possession and placed them upon his yard, and, of course, eventually to go into the

condition of the defendant.    His pecuniary situation at the
time the plaintiff received the shingles seems to be the prin-

market; (15) [that as soon as that was done, having this bill of Mr.
Thickstun's before him at $3.50 per thousand, he sat down and made
out an account of his own in reference to the two car-loads of shingles,]
crediting the defendant in this suit with the receipt of the shingles at
149½ thousand shingles, and giving him credit at $3.30 per thousand,
making a difference, as claimed, of something like thirty dollars, and
sent that statement of the account and a draft for the amount to Mr.
Thickstun, the defendant in this case, and that account and draft were
received by Mr. Thickstun, and after its receipt was indorsed and used by
him.    Now, there are two propositions of law contended for in this case
in reference to the shingles.    On the part of the plaintiff it is contended
that he did receive two car-loads of shingles on account of the defendant
in this suit, but they were not received under any contract; second, that
he having rendered to the defendant in this suit an account of that trans-
action, fixing the price at $3.30 a thousand, and more than a reasonable
time having elapsed after the sending of that account and after using the
avails of that draft, and the defendant not objecting to the account as
rendered, he is now estopped from claiming or insisting that the shingles
were delivered on his part to the plaintiff in this suit under a contract of
$3.50 a thousand; and having received the money it operates as a settle-
ment between the parties, and the party defendant is concluded from
urging or insisting upon the terms of the contract as first agreed upon
between the parties.    Now, if you find, gentlemen of the jury, that the
parties contracted in reference to the shingles in May, (and you find on
the part of the defendant,) or if you find that the parties had a conversa-
tion, and entered into a contract in reference to the delivery of the shin-
gles, and that the party defendant was to ship the shingles when he
could get rolling stock or cars with which to ship the shingles, and he
shipped the shingles within that time, then, of course he would be enti-
tled to his $3 50 per thousand.    (16) [If you find, gentlemen of the jury,
in this case that the contract was to ship within a week, and you further
find that the defendant in this case shipped the shingles, but not within
a week, but he shipped the shingles under this contract, and you further
find in this case that the shingles were received by the plaintiff at Tole-
do as shingles talked about by them in their negotiations in reference to
the shingles, he received those shingles; and you further find that, be-
tween the negotiations for the shingles and the receipt of the shingles,
there had been no notice on the part of the plaintiff in this suit rescind-
ing the contract; that he received the shingles in June, and took them
into his possession without notifying the defendant in this suit that he
repudiated the contract on account of time, then, under the rules of law,
he would be holden for those shingles at $3.50 per thousand. And if you
should find these facts, then, so far as determining the price at which
you should figure the shingles in this case, you would figure the shingles
at $3.50 per thousand.]    The next question is a question in reference to
the delay after receiving the account as figured by Mr. Peter. It appears
in evidence that, on or about the twenty-seventh of June, at the time he
sent this draft, he sent a statement of the account to Mr. Thickstun with
the draft; and it is claimed that he made no objection to this account as
rendered.    And if you find that this account, as rendered, figured the
shingles at $3.30, and Mr. Thickstun made no objection to the account,
and you further find that a reasonable time had elapsed, or he had a
reasonable time in which to look the account over and determine
whether it was correct or not, and made no objection, then he would be
concluded by the items of the account as rendered to him by Mr. Peter.

cipal element in that portion of the charge excepted to. *American Transportation Co. v. Moore* 5 Mich. 368.

[The judge then gave the first three charges requested by the plaintiff.]

In connection with this matter, gentlemen, of the rendering of the account, before you take the plaintiff's view of the case in reference to this particular branch of the case, you must be satisfied from the proofs in the case that there has been no objection on the part of Mr. Thickstun to the correctness of this account. And it is necessary for you to go through the proofs, scan the proofs closely in the case, and determine in your minds whether there has been on the part of Mr. Thickstun any objection raised. (17.) [And I desire to call your attention to the testimony of Mr. Thickstun in reference to sending the letter, if he sent a letter, and also to the conversation that was had between Mr. Thickstun and Mr. Peter here in town, and I think, as recollected by Mr. Peter, at the depot, and Mr. Thickstun, as I understand, don't recollect it; but that matter is for you to determine, and what was said between the parties as to the correctness of this account. If there was an objection made to the account, it was a timely objection, undoubtedly, because it is claimed by the parties in this suit that it was within three weeks of the time of the rendition of the account;] and if a party objects to an account within a reasonable time, then, of course, the account is open for contention between the parties. And it is for you to determine in this case whether there was on the part of Mr. Thickstun, after he received this account, and after he had an opportunity to object to it, he did object. (18.) [The objection to the account that it was not what was his due, or was not what the shingles cost him, that he was losing so much, would be such an objection, gentlemen of the jury, as would entitle him to contest the matter, so far as any admission is concerned of the correctness of the account,] if you find that he did object. If you find that he did not, gentlemen of the jury, then, under the rule of law, while it is perhaps a technical objection, it is such a rule of law that I think you would be bound by it, and would be bound by it in this case, if you find the facts all here.

The fourth request on the part of the plaintiff in this suit, gentlemen of the jury, is: 'If the jury find that Peter sent Thickstun, June 27, '81, a check for $407.35, on which was written, 'payment in full for shingles shipped to him in cars 1997 and D 324,' and finished unloading the cars June 27, '81, and that Thickstun negotiated said check and drew the $407.35, this would have the effect of a receipt in full given by Thickstun to Peter.' (19.) [No, gentlemen of the jury, I don't desire to lay down the rule as broad as stated in that request, but I desire to call your attention to it. Now, you may take the receipt of this check into consideration, and consider it and what is stated in the body of the receipt over the signature of William Peter; take it in connection with the testimony offered upon the part of Mr. Peter as to the reason why he sent this check, and the testimony upon the part of the defendant as to why he received the payment. Now, I understand the rule of law to be, gentlemen, in a case of this kind, if a receipt is given by a party who is acting under a stress of circumstances, and it is not of his own free will; that he is compelled to do it to save his financial standing, and does not do it of his own free will, intending thereby to be bound by it as a settlement in full of the transaction,—does not intend to be so bound,—that he need not be so bound under the law. This check is in no way signed by Mr. Thickstun, except the indorsement of the check upon its back whereby he could obtain the money. Now, gentlemen of

For the errors above mentioned the judgment must be reversed with costs and a new trial granted.

The other ·Justices concurred.

_____

the jury, if you should find that this was received by Mr. Thickstun in so far settling the negotiations, and the pay for the two car-loads of shingles shipped by him to Mr. Peter, not intending that it should be a full payment of the entire price for the shingles, and that his financial condition was such that he was under obligation to receive this money. then the receiving and using the $407.35 would not be a receipt, need not be considered, need not have the effect of a receipt in full by you in considering this transaction.] It may be taken into consideration, gentlemen of the jury, 'with the other facts and circumstances in the case, as showing with what intent this matter was sent, and with what intent it was received by Mr. Thickstun.

Now, gentlemen of the jury, in this case you will take all the circumstances in the case and the rules of law that I have indicated to govern you in applying these facts to the case, and arrive at such a conclusion as between these two parties you will be satisfied is right, from the evidence in the case. In the first place, gentlemen of the jury, under the rule as laid down by the court, you would figure the shingles at $3.50, if you find that they were shipped as I have indicated; then deduct the freight, $76, I think,—"

*Mr. Geer.*   "$76.13; it would be just $30 difference."

*The Court.*   "Just $30 difference; then deduct from that, gentlemen of the jury, the $407.35; that is the amount of the check, and that will be the balance, of course, figured at $3.50, due the defendant in this suit so far as the shingle transaction was concerned; then deduct that from the amount of the bran and middlings, and that would be the balance, if you find, gentlemen of the jury, that there has been no settlement between the parties, from the proofs, and you find that the party is not estopped by the settlement from contesting the correctness of the bill as rendered by Mr. Peter."

ASSIGNMENTS OF ERROR.

The court erred in permitting the witness William Peter to answer the following questions: (1) "How many million of dollars a year are you doing at Toledo?" (2) "Where else were you engaged in business?" (3) "How many men have you in your employ down there?" (4) "You have a large lumber interest there, and also a grist-milling business?" (5) "Where else are you doing business besides at Columbiaville and Toledo, and what kinds of business are you doing there, and how large a business, and about how many men do you employ?" (6) "What is your business at Bay City, what kind of a business, and how many men do you employ up there at Bay City?" And in admitting in evidence (7) the Toledo *Blade* of date June 27th. (8) The Toledo *Blade* of July 27th.   *   *   *   And in charging the jury: [See assignments of error numbered 15, 16, 17, 18 and 19, as shown in the charge.] (20) And in allowing he witness Thickstun to answer the following question: "What was the price you received for the shingles shipped to Toledo to Mr. Mason ?"