## HUDSON & COMPANY v. THE NORTHERN PACIFIC RAILWAY COMPANY, Appellant.

**Contract Against Negligence.** Wherever the common law is in force through absence of statute, a common carrier can not, by contract, shield itself from its own negligence.

**Measure of Damage: Evidence: DELAY IN TRANSPORTATION.** The measure of damage is the difference between the destination market the day of arrival and what should have been the day. If on the day of actual arrival the class of property shipped has no market value at point of destination, evidence of market value at other points whose market has influence on that of the point of destination, is admissible.

SAME: WITNESS may base opinion evidence as to values on market report and quotations.

**Waiver.** A contract provides that claims for damage must be in writing and made within a specified time. One injured by delay of shipment orally laid his claim before the general freight agent after said time had elapsed. By his direction he made out a claim and left it with the claim agent. No one then objected to the failure to file said notice. The claim agent, later, wrote, declining to pay in full, solely because there was no liability, but offered to pay some extra expenditures caused by the delay. *Held*, jury was warranted in finding that the notice covered by the contract was waived. *Messengale v. Co.*, 17 Mo. App. 257, distinguished.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

FRIDAY, OCTOBER 19, 1894.

ACTION at law to recover damages for delay in the shipment of thirteen cars of cattle from Genesee, Idaho, to Sioux City, Iowa. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed*.

*Swan, Lawrence & Swan* for appellant.

*Joy, Call & Joy* for appellee.

DEEMER, J.—On the thirteenth day of July, 1891, he plaintiff, through his agents, delivered to the

defendant, at Genesee, Idaho, for shipment to Sioux
City, Iowa, thirteen car loads of cattle, consigned to
"Wyatt & Hopkins," for sale on the general market,
for the account of plaintiff.    The cattle were received
by the defendant, and it undertook to transport them,
as a common carrier, to their point of destination.
They did not reach Sioux City until about midnight on
the twenty-first, or early morning of the twenty-second,
day of July.    The plaintiff claims that the cattle were
delayed on the way by reason of the negligence of the
defendant, its agents and employees, for an unreason-
able length of time, and that, by reason thereof, he was
damaged in the shrinkage of the animals, decline in
the market price, and in expense in caring for them
during the delay, in the aggregate the sum of one
thousand, nine hundred and eighty-eight dollars and
seventy-five cents.    The defendant, while admitting
the receipt of the cattle, alleges that it did so under a
contract with Wyatt & Hopkins which provided, among
other things:    "The said railroad company shall not
be liable for the loss or death of, or for any injuries
received by, any of such stock, unless the same is imme-
diately caused by the willful misconduct or the actual
negligence of the said company, or its agents, servants,
or employees.    The said shipper further agrees that, as
a condition precedent to his right to recover any dam-
ages for loss of, or injury to, any of said stock, he will
give notice in writing of his claim therefor to some
officer of the said railroad company, or to its nearest
station agent, before said stock has been removed from
the said place of destination, and before such stock has
been mingled with other stock."    It provided further:
"The shipper hereby assumes all risk of damage which
may be sustained by reason of any delay in such trans-
portation, not resulting from the willful negligence of
the railroad company."    It avers that this contract was
entered into in Idaho, and that it was lawful under the

laws of that state, and binding upon the parties; that the alleged delay in the shipment of the cattle was not due to any want of care, or carelessness, on the part of the defendant, its agents or employees, but the damage, if any, caused by the delay, was assumed by the plaintiff, or occasioned by his carelessness and neglect. Defendant further says, in answer, that plaintiff did not give the notice in writing of his claim for loss or injury, as provided by the contract. The plaintiff, in reply, admitted the making of the contract, but denies its validity, and further admits that he did not give the notice required by the contract of his loss and injury, but alleges that the defendant waived the same. On the issues thus joined, the case was tried to a jury, which returned a verdict for plaintiff, on which judgment was rendered, and defendant appeals. Although forty-one errors are assigned, defendant, in argument, discussed but few of them; and, under the well known rules of this court, we will consider those only which are argued, the others being waived.

It is first urged that there was not sufficient testimony of waiver of the provisions of the contract requiring notice to be given the company by the plaintiff of loss or injury to his stock. This question is presented by the assignment of errors wherein it is claimed that the court erred in not giving to the jury the ninth instruction asked by defendant, to the effect that the proof introduced did not, as a matter of law, amount to a waiver. The court instructed the jury that the contract was binding upon the plaintiff, but that the defendant might waive its provisions, and gave them proper rules to determine what would constitute a waiver. This instruction was not properly excepted to, and the evidence adduced to support a waiver, except as to one particular item, was received without objection. There is no assignment in the record that the testimony does not support the waiver, except as

it arises upon the exception to the refusal of the court to give the instruction asked. We will assume, however, that the question is properly presented, and turn our attention to the question as to whether there was sufficient evidence to support the alleged waiver.

It appears from the testimony that after the receipt of the cattle, and some time early in August, plaintiff went to St. Paul, and saw Mr. Moore, the general freight agent of the defendant company. He was at that time the head of defendant's entire freight shipping business. Plaintiff related the facts of the case to him, and told him he had sustained a loss. Moore told plaintiff to make out a statement of his damages, or to go to Mr. Harrington, the general claim agent. Moore took plaintiff to Harrington, and told him he (plaintiff) had a claim against the company, and to have plaintiff make out a bill for his damages, and the loss he had sustained; and, if they found plaintiff entitled to any damages, they would adjust it at once. Plaintiff made out a claim, and left it with the claim agent, at this interview. Afterward the claim agent wrote plaintiff the following letter (Exhibit 1):

"ST. PAUL, MINN., Nov. 20, 1891.

"*Messrs. W. C. Hudson & Co., Sioux City, Iowa.*

"GENTLEMEN:—Referring to your claim of August 6, 1891, for one thousand, nine hundred and eighty-eight dollars and seventy-five cents, I have investigated this matter thoroughly, and have laid the claim before our general freight agent, and also before our law department. The law department is of the opinion that we are in no wise liable for the amount of the claim. I am directed, however, by Mr. Moore, the general freight agent, to say to you that we will refund the extra expenses, account of feed, etc., at the time the delay occurred. Let me know if this is satisfactory.

Give me total amount of extra expenses thus incurred, and I will have check sent you at once.

"Yours, truly,
"FRED HARRINGTON, F. C. A."

We are of opinion that these facts were sufficient evidence of a waiver on the part of the defendant, and of its right to insist upon the notice required by the contract, assuming it to be valid, to justify the court in submitting the question to the jury. Such forfeitures are not favored in law, and "courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so, on which the party has relied and acted." Any agreement, declaration, or course of action on the part of him who is to be benefited by the contract, which leads the other party to believe that, by conforming thereto, the forfeiture will not be incurred, will, and ought to, estop the promisee from insisting on the forfeiture. *Insurance Co. v. Eggleston*, 96 U. S. 577; *Insurance Co. v. Doster*, 106 U. S. 30, 1 Sup. Ct. Rep. 18; *Lyon v. Insurance Co.*, 20 N. W. Rep. (Mich.) 829. "Waiver is where one in possession of any right, whether conferred by law or contract, and of full knowledge of all the material facts, does, or forbears the doing, of something inconsistent with the existence of the right, and of his intention to rely upon it; and thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward." Bish. Cont., section 792. The provision in the contract in question was for the benefit of the defendant, and it might elect to rely on it or not, as it saw fit. If it so conducted itself as to evince an intention not to rely thereon, and induced the plaintiff to go to the trouble and expense of making out his claim for damage, in accordance with the suggestion of its general freight agent, it is now estopped from insisting on the forfeit-

ure. *Hollis v. Insurance Co.*, 65 Iowa, 454, 21 N. W. Rep. 774; *Titus v. Insurance Co.*, 81 N. Y. 410; *Insurance Co. v. Norton*, 96 U. S. 234.

In the case of *Titus v. Insurance Co.*, the court, in speaking of a waiver of forfeiture in insurance policies, says: "But it may be broadly asserted that if, in any negotiations or transactions with the assured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act, or to incur some trouble or expense, the forfeiture is, as a matter of law, waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel"—citing *Allen v. Insurance Co.*, 12 Vt. 336; *Webster v. Insurance Co.*, 36 Wis. 67. See, also, *Roby v. Insurance Co.*, 24 N. E. Rep. (N. Y. App.) 808; *Grubbs v. Insurance Co.*, 13 S. E. Rep. (N. C.) 236; *Insurance Co. v. Kittle*, 39 Mich. 51; *Carpenter v. Insurance Co.*, 28 N. W. Rep. (Mich.) 749. The same doctrine applies to waivers of forfeiture in leases (Tayl. Land. & Ten. [5 Ed.], sections 287–749; 1 Smith, Lead. Cas. 20, A); and to waivers of notice required by telegraph companies of claims for damage (*Hill v. Telegraph Co.*, 11 S. E. Rep. (Ga.) 874; *Telegraph Co. v. Stratemeier*, 32 N. E. Rep. (Ind. App.) 871; *Telegraph Co. v. Yopst*, 11 N. E. Rep. (Ind. Sup.) 16, 20 N. E. Rep. 222). The case of *Massengale·v. Telegraph Co.*, 17 Mo. App. 257, does not announce a contrary rule. In that case the sender of the message was put to no trouble or expense at the request of the company. The general agent of the company merely promised to look into the matter. The fact that the waiver in this case was not made until after the time had expired for giving notice is not controlling, for the defendant's general agent treated the liability of the company as

still existing, and directed the plaintiff to go to the trouble and expense of filing his statement and claim for damages. At least, there was testimony authorizing the jury to so find. The claim agent, in refusing to pay the plaintiff's claim, did not put it on the ground that no notice had been given, but denied liability for the loss.

II.   It is next urged that under the contract of shipment, which was made in Idaho, the plaintiff assumed all risks and damage in the shipment of the cattle not growing out of the willful negligence of the railroad company; that there is no statute in Idaho making such contracts illegal, and, therefore, it is in full force and effect; and that there is no proof that the delay was due to the willful neglect of the company. The contract having been made in Idaho, to be partly performed there, its validity is to be determined by the laws of that state. *Talbott v. Transportation Co.*, 41 Iowa, 247; *Fairchild v. Railroad Co.*, 24 Atl. Rep. (Pa. Sup.) 79; *Hart v. Railroad Co.*, 112 U. S. 331, 5 Sup. Ct. Rep. 151; *Hazel v. Railway Co.*, 82 Iowa, 477, 48 N. W. Rep. 926. As there is no statute in Idaho regulating such a contract, and as from the proofs it appears there have been no decisions upon the subject, we will presume the common law is in force there. Under the common law, a carrier may, by special contract, limit its liability as an insurer, as for the loss of goods by fire and other casualties which are not the result of its negligence; yet it can not restrict it so as to excuse itself from loss or damage resulting from the negligence of its servants or agents. 3 Wood, R'y Law, 1885; *Railroad Co. v. Lockwood*, 17 Wall. 357; *York Co. v. R'y Co.*, 3 Wall. 107; *Navigation Co. v. Merchants Bank*, 6 How. 344; *Hart v. Railway Co.*, 5 Sup. Ct. 151; *Shriver v. Railway Co.*, 24 Minn. 506; *Hoadley v. Transportation Co.*, 115 Mass. 304. There was sufficient testimony to justify a finding by the jury

that the delay was due to the breaking down of a
bridge on the defendant's line of way, near Spokane,
in Washington, and that the bridge went down by
reason of the negligence of the defendant, in allowing
the timbers to become rotten, defective, and out of
repair.   The defendant could not, as we have shown,
relieve itself from responsibility for damages occasioned
by the delay if this delay resulted from its own negli-
gence; and the stipulations in the contract of affreight-
ment are no defense to this action.

III.    After the discovery of the broken bridge at
Spokane, the train which was carrying plaintiff's stock
was unloaded at the town of Sprague, Idaho, and the
cattle turned into defendant's stock yards at that place.
It is claimed by plaintiff that these yards were too
small; there was not sufficient room in which to feed
and water the stock; that the watering trough was too
small, the feed scarce, poor, and unfit for cattle; and
that he was obliged to go outside and buy feed at his
own expense; that, by reason of the condition of the
yards and the lack of water and feed, the cattle shrunk
in weight, and his damage was augmented.    Defend-
ant insists there is a lack of testimony to sustain these
claims of the plaintiff.    From a careful reading of the
testimony we are convinced there was sufficient evi-
dence on these points to justify the verdict by the jury,
if it were based upon these grounds.    It is also con-
tended by defendant that there is no evidence showing
that the cattle were not transported within a reasona-
ble time.    With this contention we can not agree, for,
in our opinion, there was ample evidence on this prop-
osition.    It would serve no useful purpose to set it out
in this opinion, which is already growing too long, and
the parties must be content with our conclusion.

IV.    Plaintiff claims, as an element of damage,
depreciation in the value of the cattle between the
eighteenth day of July, when the ·cattle should have

arrived had the defendant been diligent, and the time when they did in fact arrive. Upon the arrival of the cattle in Sioux City, they were reshipped to, and sold, in South Omaha. When they reached South Omaha, about one-half of them were classified and sold as beef cattle, and the remainder as feeders. It was shown by the testimony that the market price of beef cattle at Sioux City, South Omaha, and Chicago was relatively the same, and that the Sioux City market was controlled by the Chicago and South Omaha markets, allowing the difference in freight. It was also shown that there was no market for feeders in Sioux City on the twenty-first of July. Witnesses were allowed, against defendant's objections, to state the market price of these cattle at Sioux City, South Omaha, and Chicago on the eighteenth day of July and on the twenty-first; and this is complained of as error. We think the rulings were correct. Of course, the ultimate question for the jury to determine, in case there was delay in the shipment, was the difference in the market value of the cattle at Sioux City, Iowa, (the place of delivery), on the eighteenth and twenty-first days of July; but testimony as to the market price at South Omaha and Chicago on these days was proper to go to the jury, under the facts disclosed as evidence bearing upon the market price at Sioux City. *Lowell v. Commissioners*, 146 Mass. 403, 16 N. E. Rep. 8; *Cahen v. Platt*, 69 N. Y. 348. Witnesses were allowed to testify as to values, who based their opinions upon market reports and quotations. Such a witness is competent to speak as to values. *Sisson v. Railway Co.*, 14 Mich. 489; *Peter v. Thickstun*, 51 Mich. 589, 17 N. W. Rep. 68; *Railway Co. v. Perkins*, 17 Mich. 296.

We have endeavored, as best we may, to cover every point made in the defendant's argument, and our conclusion is that there is no prejudicial error in the record; and the judgment is AFFIRMED.