### Elisha C. Litchfield v. Coe Garratt and another.

To warrant any recovery in an action upon contract, a right of action must arise upon a contract made by a party to the record.

Suit was brought in the name of parties to a written contract, for the benefit of assignees of such contract, and was sought to be supported by proof of labor done by the assignees in pursuance of an arrangement between them and the contracting party, modifying the terms of the contract, which arrangement was not shown to have been authorized or assented to by the assignor. *Held,* that the action could not be maintained, as the modified contract was not a contract between the parties to the record.

Where a contract is assigned for the sole purpose of enabling the assignees to collect and apply certain moneys coming due to the assignors thereon, and then to be

re-assigned, the assignees are not authorized without the consent of the assignors to assume the performance of the contract, or to change its terms by agreement with the contracting party.

Whether a contracting party has, by agreement with an assignee of a contract, estopped himself from making any claim to damages for the non-fulfillment of the contract by the assignor, is a question of fact for the jury; and in an action on the contract the Court has no right, after evidence has been given of such an agreement, to assume it to be established, and exclude all evidence of damages.

*Heard July 6th, 1861.  Decided July 21st.*

Error to Wayne Circuit, where Coe Garratt and William H. Nelson, suing for the use and benefit of Thomas D. Dewey and John Stewart, recovered judgment against the plaintiff in error, in an action of assumpsit. The case is sufficiently stated in the opinion.

*Walker & Russell* for plaintiff in error.

*Goulds & Hanchett,* and *G. V. N. Lothrop,* for defendants in error, argued that Litchfield, by the agreement made with Dewey & Stewart, on the faith of which they had acted, was estopped from claiming damages as against the claim in this suit:— 21 *Wend.* 94; 3 *Hill,* 221 : 14 *S. & R.* 304; 17 *Conn.* 355; 1 *Greenl. Ev.* § 207; 21 *Wend.* 172; 4 *Barb.* 498; 8 *Wend.* 483.

The objection that, the suit being brought upon the written contract, for the benefit of the assignees, no proof of a parol agreement with, or a declaration to them as such assignees, in reference to the contract, could be given in evidence to affect the rights of the parties under it, is not well taken. The case all shows that the claim to recover was upon the contract, and no other claim was made. The effect of the parol agreement proved was, that if the assignees would go on, advance money and run the logs, the price of cutting and running the logs would be paid, according to the contract, for so much as was cut and run, and no claim for damage made. This was at most only a parol agreement to vary the written contract so far as it required the plaintiffs below to get out four million feet in the year 1859. The proof was given to prevent a recoupment of

damages by Litchfield. The recovery was upon the written contract alone.

CAMPBELL J.:

Suit was brought in the Court below upon a written contract, whereby Garratt and Nelson agreed to cut, haul, mark and deliver in Flint River all the pine timber upon certain lands described therein. The provisions important to be considered were as follows: Not less than two millions feet were to be delivered in 1858, and not less than four millions in each of the ensuing three years, and all was to be cut from the several lots of land in a specified order, one lot to be stripped before the next was touched. The price was to be two dollars per thousand feet, one dollar per thousand being payable on each two hundred thousand feet when hauled to the water and marked, fifty cents per thousand when run down and scaled for delivery in Flint River, and the remaining fifty cents within sixty days after delivery in Flint River. It was also provided that should Garratt and Nelson fail to perform their work in as diligent and thorough a manner as should be satisfactory to Litchfield, the latter might complete the contract and hold them responsible for any excess in cost above the contract price.

The declaration was filed containing, besides the common counts, special counts avering performance by the delivery of the four millions required by the contract for the year 1859.

Defendants gave notice of several defenses under their plea, and reference will be had hereafter to such as are material. On the ninth day of December, 1858, Garratt and Nelson executed to Dewey and Stewart an assignment of the contract of the following tenor:

"Whereas the undersigned, William H. Nelson and Coe Garratt, have a contract with Elisha C. Litchfield for cutting and putting into Flint river a certain quantity of pine logs, in the manner and for the consideration expressed

in said contract, which bears date on the 28th* day of December, 1857, and is now, with this assignment, placed in the hands of Dewey & Stewart, of Owosso. And whereas, we have sub-let to Hosea Fletcher the job of cutting and drawing a certain portion of the logs referred to in said contract, for which we agree to pay him eleven shillings and six pence per thousand, as specified in the contract last mentioned.

"And whereas the said Hosea Fletcher has become indebted to said Dewey & Stewart for means to carry on said work, and for other purposes, and is to be indebted for advances hereafter to be made to carry on said job. Now, therefore, in order to secure said Dewey & Stewart for advances so made and to be made as aforesaid, we hereby sell, assign, transfer and set over to said Dewey & Stewart, their executors, administrators, heirs and assigns, the said contract first above mentioned; to have, hold and collect the same for their own use and benefit, and with full power, in our name or otherwise, to collect the money due and to become due on said contract.

"The money received on said contract is to be disposed of and appropriated as follows, viz: out of the first money so received they are to return whatever may be due to said Fletcher under his contract with us above referred to, to be applied in payment of whatever may be due them from the said Fletcher, for said advances and expenses connected therewith, and with this assignment; and such portions thereof as shall be due us under both of said contracts is to be paid to us.

"It is understood and agreed that said Dewey & Stewart may retain, to apply on the said demand against said Fletcher, the one dollar per thousand due from said Litchfield when said logs are hauled to the said bayou on Pine river, as expressed in said first mentioned contract, provided the said one dollar per thousand shall be required to pay advances for the current expenses of carrying on said work.

"When the contract with said Fletcher shall be fulfilled, and the money due him shall be collected of said Litchfield, the said contract is to be re-assigned and delivered to us.

"The said Dewey & Stewart, after paying themselves the amount which may be due them from said Litchfield, are to hold the balance, to be applied to pay what said Fletcher may owe us."

Notice of this was given to Mr. Allison, the agent of Litchfield, on or about the 27th of December.

The plaintiffs proved this assignment and notice, and gave evidence tending to show that David Gould, as agent for Dewey & Stewart, got out and delivered something over three million feet. That before getting this out he saw Allison, who informed him there were four million feet to be cut and run down in the spring of 1859. Gould said he thought there were not so many banked, and asked if Dewey & Stewart got out the logs whether Litchfield would pay for them; and said if the work would not be paid for at the contract price, Dewey & Stewart had better not invest any more money. Allison said if Dewey & Stewart would go on and get out the logs themselves, Litchfield would pay them the balance according to the contract price, which would have become due to Garratt & Nelson if they had continued with the contract, without any claim for damage. Allison talked of having had trouble with Nelson & Garratt, and said they had thrown up the contract. One Fletcher run the logs, or a portion of them, and was employed for that purpose by Gould for Dewey & Stewart.

Evidence was introduced by defendant tending to show that before Gould's application to Allison, Garratt & Nelson were in the woods, and that Garratt was afterwards. That they both claimed the job, and forbade Gould's going on. The defendant offered to prove that his mills had been kept idle a month in consequence of not having the whole

four million feet. Also that the timber had not been cut from the lands in the order required by the contract, and that damage had accrued by reason of his having been obliged to enter upon the completion of the contract at an expense of more than two dollars per thousand. The Court ruled out all of these matters, on the ground that Litchfield was estopped from setting them up against Dewey & Stewart.

The defendant requested the Court to charge the jury, that no recovery could be had under the declaration except for work and labor done under the contract by Nelson & Garratt, or their agent or sub-contractors. That if Dewey & Stewart made a parol contract with Litchfield to get down the logs from the bayou on receiving the balance of the money which would become due to Garratt & Nelson if they had completed the work, the suit should have been on the parol contract, in the name of Dewey & Stewart. That if the jury find such parol agreement to have been made, their verdict should be without reference to any evidence under it, and that if Garratt & Nelson had been fully paid, their verdict should be for the defendant.

The most important question in the case arises upon these requests to charge, all of which were refused by the Court.

It is an inflexible rule of the common law that a right of action on contract, to warrant any recovery, must arise upon a contract made by the party to the record. Dewey & Stewart are not such parties. Garratt & Nelson are the plaintiffs in this cause, and, whatever may be the rights of their assignees to protection against any portion of their liabilities, no recovery can be had in their behalf on any contract to which the nominal plaintiffs were not parties. The inquiry then arises whether the arrangement made with Allison was made as the contract of Garratt & Nelson. When a contract has been absolutely assigned,

and a subsequent variation is made with the assignee alone, it cannot be held to be the assignor's contract, because he neither reaps its benefits nor shares its responsibilities. He cannot be sued upon it, and there is no better authority for his suing upon it. In the case before us, the assignment was not designed to substitute Dewey & Stewart for Garratt & Nelson. Dewey & Stewart were to hold it for no other beneficial purpose than to repay to themselves such advances as they had made, or should make, to a sub-contractor named Fletcher. To repay these they were at liberty to retain only so much money as should become due to Fletcher on his sub-contract. The remaining interest was to belong to Garratt & Nelson, who were to receive their own share of the money, and to remain the real owners of the contract, which was to be re-assigned when the others were paid. In other words, the assignment was only designed to authorize Dewey & Stewart to collect the moneys coming due from Litchfield, and apply them as provided for.

It is very plain that this gave Dewey & Stewart no right whatever to change the terms of the contract, or to assume its performance. Garratt & Nelson did not contemplate any change in their own relations to it. And it becomes immaterial, therefore, in this view, whether Garratt & Nelson could be regarded as having thrown up the contract or not at the time Gould made the arrangement with Allison. It was not made in their name or behalf, and had it been, they never authorized or ratified it. The only evidence bearing upon their treatment of it shows that they repudiated any right in Dewey & Stewart to assume the work.

There was error, therefore, in refusing to give the instructions prayed. No recovery should be permitted for any work done under the parol arrangement.

There was also error in refusing to allow evidence of damages arising by reason of not cutting timber on the

proper lands, and by reason of the defendant being compelled to complete a portion of the contract himself. The Court excluded this on the ground that the agreement with Dewey & Stewart created an estoppel. So far as the evidence goes, there is no proof that any damage was waived arising out of either of these causes, as against Garratt & Nelson. If such proof existed in the case, it was still a question of fact for the jury; and the Court could not exclude evidence by assuming a fact to exist which had not been found by them. The evidence should have been received, and the jury instructed upon the effect of such facts as they might find established.

These are the only points which we deem it necessary to consider.

The judgment must be reversed, with costs, and a new trial granted.

MANNING and CHRISTIANCY JJ. concurred.

MARTIN CH. J. concurred in the result.