# Horatio B. Sisson and another v. The Cleveland and Toledo Railroad Company and others.

*When nominal parties to sue upon contract.* A written contract for the transportation of goods, entered into by the real owner of the property in the name of those from whom he purchased,—they having been the original shippers by another line, from which the defendants received them, and required by the defendants to be thus made in the name of such original shippers—may be sued upon by said real owner of the property in their names.

*Evidence; statements of conductor of train.* Where the question, whether the engine employed in drawing a train was of sufficient capacity for the purpose, was material to the issue, the statements made by the conductor, while he was engaged in the defendant's business, in respect to the contract in question, and relating to the delay complained of and in issue in the suit, and while he had control of the train, were held to be competent and proper evidence, as a part of the *res gestæ.*

　　The defendant would not be absolutely bound by such statements, but they are admissible on general principles of agency.

*Expert.* Whether the witness could judge, from the appearance, as to the capacity of an engine to draw a train, is a question as to which none but an expert is competent to testify. Such a question put to a witness, not claimed, or in any way shown to be an expert, was properly overruled.

*Evidence of market price. Market reports in newspapers.* Evidence of the state of the markets, as derived from the market reports in the newspapers, is competent. Such reports, which are based upon a general survey of the whole market, and are constantly received and acted upon by dealers, are far more satisfactory and reliable than individual entries, or individual sales or inquiries.

*Immaterial which of two joint defendants committed the default.* Where two railroads are sued on a joint contract for transportation, evidence offered by one of them to prove that the other neglected to furnish cars, is immaterial.

*Carrier, when liable for damage occurring beyond his line of transportation.* Where a carrier agrees to carry goods from Toledo to Buffalo, known to be destined to an Albany or New York market, if his default by delay causes damage to the shipper from the non-arrival of the goods in a reasonable time at Albany, he is responsible for such damage as much as if it had actually occurred at Buffalo.

*Fall in market value may be recovered as damages.* In an action against a carrier for a failure to deliver goods, shipped to a market, in a reasonable time, the fall in the market value of the property, between the time when it should have been delivered, and the time of its actual delivery, may be recovered as damages.

*Construction of contract.* The agreement with a carrier contained the following provision on the part of the shipper: "does hereby agree to take, and hereby does assume all and every risk of *injuries* which the animals, or either of them, may receive in consequence of any of them being wild, unruly, vicious, weak, escaping, maiming or killing themselves or each other, or from delays," &c., "and risk of any loss or damage which may be sustained by reason of any delay, or from any other cause or thing in, or incident to, or from or in the *loading or unloading* the stock." *Held,* that this agreement refers to injuries to the animals caused by delay, &c., and to loss or damage by reason of delay in loading or unloading; and has no reference to other losses which the delays of the carrier may cause to the shipper

*Heard July 9th.　　Decided October 16th.*

Error to Lenawee Circuit.

This was an action of assumpsit, brought in the Court below against the defendants as common carriers, upon a special contract for the transportation of a lot of beef cattle from Toledo to Buffalo, on their way to the market at Albany or New York.

The evidence showed that the defendants were several Railroad Companies, owning severally different portions of the continuous line of transportation from Toledo to Buffalo. The contract sued upon was in writing, and signed by the defendants jointly.

Evidence was given to prove that the cattle were shipped by the plaintiffs on the railroad at Adrian, Michigan, to go to Albany or New York, and were then the property of the plaintiffs. On the route, and before their arrival at Toledo, the cattle were sold by the plaintiffs to John L. Perkins, who was the sole owner at the time the contract in suit was executed, and continued to be such owner, and was the real plaintiff in interest, bringing the suit in the name of the original parties to the contract.

On their arrival at Toledo, the cattle were re-shipped, or transferred to the cars and the road of one of the defendants; and, just before their starting, the agent of the defendants brought to Mr. Perkins the contract sued upon, in duplicate, and required him to sign the same, which he did. This was shown to be according to the usual custom of defendants,—to ship freight received from other roads through in the same name in which it is billed to them, and they would not make a change unless the shipper or consignee were present to direct it.

There was evidence also given, tending to show that the cattle were detained a long time on the way, by the fault of the defendants, and that the plaintiff suffered damage in consequence thereof, both by the depreciation of the quality of the cattle, and the fall of the market before they reached Albany.

The points of law made on the trial, and the exceptions

taken to the rulings of the Judge and his charge to the jury, are sufficiently stated in the opinion of the Court.

The jury rendered a verdict in favor of the defendants, and judgment was entered accordingly. The cause was brought into this Court by writ of error and bill of exceptions.

*A. L. Millerd*, for plaintiff in error.

1. The testimony of the witness, John L. Perkins, as to what the conductor of the train told him about the capacity of the engine, and also as to whether the witness could form an opinion from the appearance, as to the capacity of the engine, was competent, and ought to have been received.

2. The evidence offered to prove the state of the market in Albany and New York at the time the plaintiffs' cattle should have arrived there, was competent, and should have been received.

The evidence consisted of the knowledge the witnesses had of the state of the market, as a matter of general notoriety, derived from newspapers (in which the state of the market is published daily), and telegraph reports, and from the statements of those engaged in the business.

These are the sources of general information to which men throughout the country look, and upon which they act.

The state of the market was a matter of public and general interest, and therefore within a well established exception to the rule which excludes hearsay evidence.—1 *Greenl. Ev.* §§ 127–40; 4 *Wend.* 313; 1 *C. & H. & Edwards' Notes,* 200; *Am. Law Reg. (June,* 1866,) 464.

3. The evidence of the witness, Isaac Reynolds, as to what the custom between the defendants was when cattle were to be forwarded from their stock yard, at Cleveland to Buffalo,— as to which company furnished the cars, ought to have been excluded.

It was wholly immaterial which of the companies ought, as between themselves, to furnish the cars. It was no excuse

for the breach of the contract, that it occurred by the default of one of the companies rather than another.

4. The court erred in charging that the plaintiffs could not recover damages for loss by depreciation of cattle in the market, except at Buffalo.

The cattle were intended for the market at Albany or New York, and were shipped over the road of the defendants, on their way to such market. The defendants knew this. It was communicated to Mr. Stratton, the agent, by Mr. Perkins, at the time of their shipment on the defendants' road.

The fall in the market at the place of their destination, during the time they were delayed in reaching it, by the fault of the defendants, and in violation of their contract, was a proper element of damages.—22 *Barb.* 278.

5. The suit was properly brought in the names of the plaintiffs. The contract being in their names, they were the proper and necessary parties to an action upon it, in a court of law. John L. Perkins could not sustain an action upon it, in his own name.

No assignment was necessary to enable him to bring a suit in the names of the parties to the contract. It was only necessary that he should have their authority to do so. The contract with the plaintiffs was a valid one. It was not void because they had no interest in the cattle which were the subject of it. They might lawfully make a contract for the transportation of the cattle for the benefit of their vendee, in pursuance of the understanding between him and them, and might sustain an action for the breach of it, also for his benefit.

The want of a beneficial interest in the subject matter of the contract, on the part of the plaintiffs, is no defense to an action upon it.—2 *C. & P.* 49; 4 *Bing.* 2; 1 *Chit. Pl.* 2, 3.

It is not at all necessary that the nominal plaintiff in an action upon a contract should have any beneficial interest in the contract at the time the action is brought, nor is it necessary that he should have such interest at the time the contract is made. He may be a mere agent or trustee for another, and

yet make a contract in his own name, which would be binding on both parties, and may sustain an action upon it in his own name.

The contract in this case was made by the defendants with the nominal plaintiffs, with the privity and consent of John L. Perkins, the person beneficially interested. It was in fact made by him, in their names, in pursuance of an understanding with them when he bought the cattle, and because the defendants, according to their usual course of business, would not make it in any other name.

*C. A. Stacy,* for defendants.

1. The question put to John L. Perkins, the ruling out of which was assigned for error, was clearly hearsay. The engineer was not a competent witness. His admission could not bind the company.—1 *Greenl. Ev.* §§ 99, 114; 37 *Me.* 519; 11 *Cush.* 205; 13 *Barb.* 246.

2. The court was correct in not permitting said Perkins to swear to his opinion as to the capacity of the engine. There was no evidence that he was an expert. The general rule is that none but persons shown to be experts can swear to matters of opinion.—1 *Greenl. Ev.* § 440, note 3.

3. The fourth, fifth, sixth and seventh assignment of errors cover the same principle. The question in all is, can the markets in New York or in any other city be proved by newspaper reports or by statements of individuals made not on the market day or at the market place?—or, must they be proved by the sworn testimony of the persons who know the facts?

The former rule would violate the principles of law.

*a.* Forbidding hearsay testimony.

*b.* Requiring the presence of the witness and allowing cross-examination.

*c.* Allowing *res inter alios acta* to bind the party.—1 *Greenl. Ev.* §§ 99–124; 9 *Cush.* 36, 40.

*d.* As being a narrative of a past occurrence.—1 *Greenl. Ev.* § 110; 8 *Metc.* 436; 3 *Gray,* 374; 16 *Ill.* 558.

4. The proof objected to, of custom, by Mr. Reynolds, in the eighth assignment of errors, was preceded by proof on the part of the plaintiff of the custom of the company in receiving and forwarding stock, and the rules which governed such reception. In reply to this proof by the plaintiff, this proof was offered and received by the court. We contend that under these circumstances it was admissible, both to rebut the presumption of negligence, and to show the nature of the contract entered into by the defendants.

5. The contract shown was for the conveyance of the cattle from Toledo to Buffalo. There is no proof that the defendants ever agreed to transport the cattle further than Buffalo. There was no proof that by the terms of the contract they were to be held responsible for any damage at any other point. If the plaintiff had desired any damages elsewhere, he should have provided for it by the terms of the contract.

Fall in market cannot be recovered by way of damages.— 19 *Barb.* 36; 3 *Hill*, 333; 6 *Duer*, 375.

Even in those cases where difference in the market price has been recovered, the rule has always been confined to difference at the place of delivery.—2 *Kern.* 245.

6. The question presented by the last assignment of errors is, whether a plaintiff having no interest in the property, either as owner or consignee can recover for damages which he never, either directly or indirectly sustained, or for losses or expenses which he never was liable to pay.

The declaration alleges that the plaintiffs, then and there, had cattle which they intended for, and were desirous of transporting to the market. The proof shows that the plaintiffs did not have the cattle. The declaration alleges loss to plaintiffs by fall in prices. The proof shows the plaintiffs suffered no loss. The declaration alleges that the plaintiffs were put to and suffered great cost and expense in taking care of, feeding, and watering the said cattle. The proof shows they suffered and were put to no cost and expense whatever.

These and all the other material allegations of the declara-

tion, instead of being proved true, are shown to be false. This record would not protect the defendants, should they be sued by John L. Perkins. Under the showing in this case the defendants could not have recovered the freight of the plaintiffs, had the property been delivered before payment. As a general rule the action must be brought in the name, of the consignee.—*Edwards on Bailments*, 561. Neither the consignor nor consignee, as such, is to bring the action, but the owner of the goods. Whenever it appears that the person suing is the real owner, there is an end to the objection.—1 *Johns.* 223 ; 6 *Wend.* 603 ; 15 *Id.* 474 ; 13 *Barb.* 57 ; 8 *Term R.* 130 ; 3 *Comst.* 322.

7. This contract should be construed like every other contract. The modern English and American authorities recognize the right of carriers and persons employing them to make just such contracts as they please in regard to terms, including price, liability of carrier, and every other matter.—6 *Howard, U. S. R.* 355 ; 1 *Kern.* 49 ; 14 *Barb.* 524 ; 13 *Id.* 253 ; 1 *Am. Railway Cases,* 171 ; *Edwards on Bailment,* 572, 573, 576.

This doctrine is recognized to the fullest extent in our own State, as a doctrine which benefits the person employing the carrier, fully as much as the carrier himself.—6 *Mich.* 245 ; *Id.* 267.

8. What was the contract proved in this case? The counsel for the plaintiffs in error contends that its legal effect was as alleged in his declaration. We, on the contrary, claim that the terms of the contract exclude all damages caused by delays, even though such delays were caused by the negligence of defendants' servants ; and we claim that the case of *New Jersey Steam Navigation Co. v. Merchants' Bank, in* 6 *How. U. S.* 335, sustained this view.

At common law the carrier was liable as an insurer of the goods against loss, except from the act of God or the public enemy ; but in case of damages occasioned by delay, where the goods were actually carried and delivered to the owner, he was liable only for negligence, and the contract was uniformly

held only to require reasonable diligence.—1 *Pars. Con.* 659 ; 2 *Id.* 183 ; 14 *Wend.* 215 ; 12 *Id.* 310, 320 ; 2 *Kern.* 245, 251 ; 12 *N. Y.* 245, 251 ; 2 *Id.* 509, 514 ; 8 *Term R.* 259.

## COOLEY J.

The Circuit Judge erred in charging that the action could not be brought in the name of the plaintiffs, but should have been in that of John L. Perkins. The written contract was made with these plaintiffs, and a court of law can only look at the promissors and promissees as the parties in legal interest, and is not at liberty to govern its action by questions of equitable right.—*Litchfield v. Garratt,* 10 *Mich.* 426 ; *United States v. Parmele,* 1 *Paine, C. C. Rep.* 252. The case is analogous to that where an agent enters into a written contract for his principal in his own name, and which the principal must enforce in the name of the nominal contracting party.—*Newcomb v. Clark,* 1 *Denio,* 226. The assignment of the contract to the party in interest would not affect this rule. The Court would take notice of the assignment for the purpose of protecting the interest of the assignee; but the assignment of a non-negotiable demand does not, at the common law, entitle the assignee to pursue remedies in his own name upon the contract. The statute which allows it—*Laws of* 1863, *p.* 102— is only permissive in its provisions, and the assignee is still at liberty to sue in the *name* of the contracting party.

We think the Judge also erred in excluding evidence of the conductor's statements as to the capacity of the engine. The statements offered to be shown were made while the conductor was engaged in the business of the defendants, in respect to the contract in question, and had control of the train, and they related to the delay complained of, which was the *res gestae* of the case. See *Baring v. Clark,* 19 *Pick.* 220 ; *Price v. Marsh,* 1 *C. & P.* 60 ; *Peyton v. The Governor of St. Thomas Hospital,* 3 *C. & P.* 363. The defendants would not be absolutely bound by such statements, but they are admissible evi-

dence on general principles of agency.—*Dunlap's Paley on Agency*, 272, *et. seq. and notes.*

The question put to the witness Perkins, whether he could form an opinion, from the appearance, as to the capacity of the engine to draw the train, might have been proper for the purpose of showing him to be an expert; but as it does not appear to have been put by the plaintiffs on this ground, we cannot say that it was improperly overruled. The fact sought to be proved was one to which none but an expert could, from mere appearance, testify; and it does not appear to have been claimed that Perkins was an expert.

We also think that the court erred in excluding evidence of the state of the markets as derived from the market reports in the newspapers. The precise question involved does not appear to have been passed upon by the courts; but we are aware of no reason and no authority which would exclude the evidence. In *Lush v. Druse*, 4 *Wend.* 317, the value of wheat at a certain point was allowed to be proved by a witness who had derived his knowledge solely from the books of large dealers in wheat at that place; and in *Re Fennerstein's Champagne*, recently decided by the Supreme Court of the United States—5 *Am. Law Reg. N. S.* 464—the market value of articles of merchandise at a particular place in a foreign country was held provable by letters written by third persons abroad, in the ordinary course of business, to other third persons, offering to sell at specified rates. The principle which supports these cases will allow the market reports of such newspapers as the commercial world rely upon, to be given in evidence. As a matter of fact, such reports, which are based upon a general survey of the whole market, and are constantly received and acted upon by dealers, are far more satisfactory and reliable than individual entries, or individual sales or inquiries; and courts would justly be the subject of ridicule, if they should deliberately shut their eyes to the sources of information which the rest of the world relies upon, and demand evidence of a less certain and satisfactory character.

14 MICH.—2 P.

We do not perceive the importance of the evidence introduced by the defendants as to which of the railroad companies should have furnished the cars to continue the transportation from Cleveland. The companies had jointly undertaken to transport the cattle to Buffalo; and they were jointly liable for a failure to fulfill the contract. The plaintiff had no concern with the arrangements of the defendants among themselves, and no right in any way to control them. It was not competent for them to make any rules, or to enter into any arrangements, or to enforce any previously made, which would modify the contract entered into with the plaintiffs; and proof that one of the defendants, instead of another, was the cause of the injury complained of, is wholly immaterial in a suit against all. If the plaintiffs could be held bound to know what the course of the companies was as to furnishing cars, they would still have the right to suppose that the company who was to furnish them would do so without unnecessary delay, inasmuch as all had entered into a joint contract which would require it.

The contract of the defendants was to transport the cattle from Toledo to Buffalo. Their ultimate destination was Albany or New York, but this fact was not stated in the contract, and the court charged the jury that the plaintiffs could not recover damages for loss by depreciation of cattle in the market, except at Buffalo. If the Judge meant the jury to understand by this charge, that the damages which plaintiffs could recover must be confined to the fall in the market at Buffalo, between the time when the cattle should have reached that point, and that of their actual arrival, we think he erred. The defendants were informed when they entered into the contract that the ultimate destination was to an Albany or a New York market; and they must be held to have assumed their obligations in reference to that fact. If in fact there was no fall in prices before the cattle had reached Buffalo, but afterwards, and before they could be delivered at Albany, a loss had occured as the direct consequence of defend-

ants' delay, it would be both illogical and unjust to hold that defendants shall be discharged, because the injurious consequences of their act did not result until the cattle were out of their own hands. The consequences of delay would attend the cattle to their final destination, just as the consequences of a fatal injury to one of them would attend the animal until his death; and in neither case could the party responsible excuse himself by showing that the actual loss, or the death, did not occur while the property was retained in his possession.

We are referred to several authorities which are supposed to hold that a fall in market value cannot be recovered by way of damages. The first of these is *Smith v. Griffith,* 3 *Hill,* 333, where it was held that the damages recoverable against carriers for the negligent loss or injury of goods entrusted to them for transportation are to be ascertained by resorting to the price which goods of the same kind and quality bore in market at the time the injury occurred; and not to the price at a subsequent period. The decision has obviously no bearing upon the question before us, but is based upon the principle that when a party is deprived of his property by the wrongful act of another, he should be compensated with such damages as would at the time enable him to procure a similar article of equal value in the market. The question in *Conger v. The Hudson River Railroad Co.* 6 *Duer,* 375, was whether the shipper could recover from the carrier damages occasioned by a loss of market through delay; and the court intimated that such damages are too speculative in their character to form the basis of legal action. The only case in point is that of *Wibert v. The New York and Erie R. R. Co.* 19 *Barb.* 36, where it was held, in an action against a carrier for failure to deliver butter in a reasonable time, that the difference between the value of butter at the time it should have been delivered, and its value at the time of actual delivery could not be recovered as damages, because the loss was not the actual and proximate result of the act complained of. The reasoning of the court is, that the fall in price was not in consequence of the delay,

and, therefore, the carrier was not liable for the resulting loss. It is to be regretted that this point was not passed upon by the Court of Appeals when the case reached that tribunal,— 2 *Kern.* 245—, as the case seems to us to lay down a rule of damages wholly unwarranted by reason or authority. To apply a similar principle to other cases, we should be required to hold that one who had unroofed the house of another, in consequence of which it became deluged with rain, would not be liable for the damages, because unroofing the building did not cause the rain. There is a great deal of refining in the case as to what are natural and proximate causes of damage; but refinement of reasoning that goes to the extent of shocking the common understanding cannot possibly establish good law. All legal damages result from the action of the party in fault, in connection with existing circumstances; and to exclude proof of those circumstances, because they were not caused by the wrongful act, would deprive the injured party in many cases of all remedy. If a loss by depreciation in the market is not a necessary and proximate result of delay in transportation, it is difficult to conceive of any rule by which a carrier can be made to compensate the party injured.

The defendants claim in this Court that the action cannot be sustained in any event, because, by the express terms of the contract, they are not to be liable for delays. We do not so read the contract. It provides that Sisson & Perkins "does hereby agree to take, and hereby does assume, all and every risk of *injuries* which the animals or either of them may receive in consequence of any of them being wild, unruly, vicious, weak, escaping, maiming or killing themselves or each other, or from delays," &c., "and risk of any loss or damage which may be sustained by reason of any delay, or from any other cause or thing in, or incident to, or from or in the *loading or unloading* the stock." As we read this agreement, it refers to loss or damage to the party by reason of injuries to the stock, caused by delay, &c., upon the cars, and to loss or damage by reason of delay in loading or unloading; and has no reference

to other losses which the delays of the carriers may cause to the shipper. There are good reasons for an agreement of this description growing out of the manner in which cattle are usually transported; the owner or his agent accompanying and taking charge of them, and being on hand to prevent injuries of the kinds specified, while no care of the owner could prevent other delays, or protect against losses which might follow incidentally from other delays. The stipulation appears to us carefully worded to cover such injuries and losses as the owner might guard against, while it studiously avoids including losses like the one complained of here.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.