St, L., I. M. & S. Ry. Co. v. Mudford.

ST. L., I. M. & S. RY. CO. V. MUDFORD.

DAMAGES: *From delay in transporting goods.*

The general rule of damages for not transporting goods within the time specified in the contract, or for unreasonable delay where no time is specified, is the difference in the diminished market value of such goods at the time and place of destination, when and where they should have been delivered, and their value when they were delivered' with interest. But if the owner has made an advantageous sale of the goods, provided they be delivered in a certain time, and the carrier has notice of the sale and condition, and negligently fails to deliver them by the time specified, the damages will be the difference between the contract price and the market value of the goods when delivered.

APPEAL from *Nevada* Circuit Court.
Hon. L. A. BYRNE, Judge.

*Dodge & Johnson,* for appellant.

Under the decision in this case, *44 Ark., 443,* nothing could in this second trial be recovered for the value of the goods. The carrier received, carried and tendered the goods in good condition to plaintiff, or his consignees, but plaintiff refused to receive them. So plaintiff was compelled to resort to his plea of special damages to recover anything.

Time was not the essence of this contract of shipment. The contract does not show it, and, indeed, plaintiff nowhere claims it; but plaintiff to avoid this, alleged in his complaint that he told defendant's agent, when he shipped these goods, that he had sold them, and that it was necessary to deliver them promptly at Cincinnati or he would lose his trade. This was the substance of his allegations.

There is no rule of law better known or more commonly recognized, as fair and just, as the rule which requires knowledge on the part of the carrier in order to fasten upon him a loss of property or sales, occasioned by delay.

To fasten liability upon a common carrier for loss of profits or sales of goods occasioned by delay, a knowledge must be brought home to the carrier, that he may know that the goods had been shipped for some particular purpose, and that losses would probably occur from such delay, thus causing time to be the essence of the contract. *46 Ark.*, *487; Hutchison on Carr.*, secs. *771-2*; *46 Miss.*, *458*; *108 Mass.*, *468*; *44 Vt.*, *565*; *5 Jones (N. C.)*, *301*; *4 Broom*, *517*.

This knowledge was denied in the answer, and there is no evidence establishing it, and the company assumed no greater liability by the delay than the depreciation in value, if any, during the time of the delay.

The damages were too remote and consequential.

2. The verdict was excessive. The damages, if any, should have been merely nominal. The value of the machines could not be recovered, because plaintiff refused to receive them. There could be no recovery for depreciation in value, as none was shown, and none for loss of profits and contemplated sales, for plaintiff failed to prove that defendant knowingly caused the delay.

3. The court erred in amending the third instruction asked by defendant. *46 Ark.*, *487; 44 ib.*, *443*.

*Scott & Jones*, for appellee.

From the testimony of plaintiff the jury could well have inferred that he advised the defendant's agent of the importance of a speedy and safe delivery of the goods at Cincinnati.

The failure of the defendant to produce the agent, Speight, is a strong presumption that his evidence would have been against it in this point. *34 Ark., 520.*

While, as a general rule, profits cannot be recovered, yet to this rule there are exceptions. *17 C. B., 21; 9 C. B., (N. S.), 632; 8 Wall, 77; 42 Ga., 462; 15 Wis., 318; 13 ib., 31–35; 6 N. Y., 85; 7 Cush., 516; 13 How., 307; 14 B. Mon., 114; 6 McLean, C. C., 612; 110 U. S., 338.* See, also, *Sedg. Dam., 6th Ed., note p. 85.*

*J. D. Cook*, also for appellee.

There can be no doubt as to the sufficiency of the proof in this case, both as to special damages and notice. *44 Ark., 443; 32 ib., 337.*

Seventy days delay has been declared to be negligence sufficient to support judgment for damages. *41 Ark., 476; Cooley Torts, p. 640.*

Compensation for actual loss sustained, is what the law aims at, and to give any force to this principle in this case, the value of the machines at the point at which they were originally and exclusively intended to be exposed for sale must be considered. *44 Ark., 487; Sedg. on Dam., vol. 2, p. 641.*

This court will not disturb a verdict as excessive, when the question has been properly submitted to a jury, unless it is evident there is no evidence to support it. *23 Ark., 215; 40 ib., 168.*

BATTLE, J. Plaintiff alleged in his complaint, that he, on the 8th of February, 1881, shipped over the defendant's road, from Texarkana, Arkansas, one box containing forty-seven gin sharpening machines, consigned to Goble Brothers, Cincinnati, Ohio; "that at the time of the ship-

ment, plaintiff and his agents at various places, had contracted and taken sundry orders for the machines greater than the number shipped, and that said machines had been contracted and bargained away for $25 each; that the machines shipped were the only ones plaintiff had for the purpose of filling these orders; that owing to some slight defect they had been shipped to Cincinnati, to be repaired and then immediately returned; that it should only have required fourteen days to carry, repair and return said machines, so that plaintiff could have filled his orders; *that defendant had knowledge of all said facts, and knowing the same, carelessly and negligently delayed* the carrying and delivering of said machines, thus causing plaintiff to lose the sale of said machines to his damage in the sum of $1000."

The defendant answered, and admitted the receipt and shipment of the machines, on February 8, 1881; "that it received the same for transportation to Cairo, there to be delivered to a connecting carrier to be forwarded to Goble Brothers & Co., at Cincinnati, Ohio."

"It admitted the delay in the delivery of said goods to the consignees at Cincinnati, but denied all negligence or fault on its part in causing said delay. It denied the price of said machines; denied the plaintiff had made any such contracts as alleged, or that plaintiff had lost the sale of said machines by or through any fault on its part."

It specifically denied that plaintiff had contracted to sell machines, as he alleged in his complaint, or that it had notice or knowledge of such contracts; and averred, that all the knowledge it had, or contract of shipment that had been made, was contained in the bill of lading.

"The answer further charged, that the goods were delivered to its connecting carrier at Cairo, in due time; were then carried to Cincinnati, and there tendered to con-

signees, who were ordered by the plaintiff not to receive the goods, and in consequence the goods were left in the hands of the carrier."

Evidence was introduced in the trial, tending to prove that the machines were delivered and shipped on the 8th of February, 1881, and reached Cincinnati, Ohio, their place of destination, on the 16th of May, 1881; and that plaintiff at the time of shipment had contracted to sell and deliver to persons residing in the states of Arkansas, Louisiana and Texas, a large number of the machines of the kind and class he had shipped; that he had contracted to sell more than he had shipped; that the machines shipped were all he had, and that he failed to perform his contracts and lost the sale of his machines by reason of the failure to deliver them at Cincinnati, in due time. But there was no evidence that defendant had notice, information or knowledge of these contracts, or of the plaintiff's ability or inability to perform them.

The court, at the request of plaintiff, gave to the jury three instructions over the defendant's objections; and gave two at the request of defendant, and refused one; and gave one on its own motion, over defendant's objections.

One of the instructions given at the instance of plaintiff over the objections of defendant, reads as follows:

"If the jury find there was any depreciation in the market value of said machines, arising from the time of the year or season in which said machines should, by the defendant, have been delivered to the connecting line, and the time or season at which they were so actually delivered, such depreciation, together with the value of time lost by plaintiff, if any such has been proven, in necessarily looking after said lost property, is the measure of dam-

St. L., I. M. & S. Ry. Co. v. Mudford.

ages; and if the jury in this case find for the plaintiff, the measure of the verdict will be as above stated."

The one asked by defendant and refused by the court is as follows:

"The court instructs the jury that in case of a delay in the transportation of the machines beyond the time stipulated, or if there is no stipulation, beyond a reasonable time for the transportation and delivery of same, the damages would be the direct and actual loss sustained thereby—such as the decline in the value of the property at the time and in the place where it should have been delivered, and its value when it was delivered, or when delivery of the same was tendered, if it had declined in value—would be the proper mode of estimating the damages unless the delay was inevitable; as where it was caused by the act of God, or the public enemy. From this amount, however, it would be proper to deduct the freight, where that had not been paid."

And the one given by the court, on its own motion, reads as follows:

"The court instructs the jury, that in case of a delay in the transportation of merchandise beyond the time stipulated, or if there is no stipulation, beyond a reasonable time for the transportation and delivery of the same, the damages would be the direct and actual loss sustained thereby; such as the decline in the value of the property (the difference between the value of the property in the market where it was to be exposed for sale at the time when it should have been delivered), and its value when it was delivered, or when delivery of the same was tendered, if it has declined in value (and the jury should find that the delay of the carrier was the occasion of the loss in the reduction or change of the market value of said property, this would be the proper mode of estimating

the damages), unless the delay was inevitable, as where it was caused by the act of God or the public enemy. From this amount, however, it would be proper to deduct the freight, where that had not been paid."

The jury returned a verdict in favor of plaintiff for two hundred and fifty dollars. Defendant filed a motion for a new trial which was overruled; and it saved exceptions and appealed.

We consider it unnecessary to notice any question in the case, except that as to the measure of damages.

DAMAGES: From delay in transporting goods. In cases like this, where goods have been delivered to a common carrier for transportation and not delivered at their destination within the time specified in the contract, or, if no time was specified, within a reasonable time, the damages recoverable on account of the delay, if the goods of the particular kind shipped have fallen in market value during the delay, as a general rule, is the difference between the value of the goods at the time and place they should have been delivered and their value when they were in fact delivered, with interest, after deducting the unpaid cost of transportation; the value at the time when they were in fact delivered being computed at the place of destination. *St. L., I. M. & S. Ry. v. Phelps; 46 Ark., 485; 3 Sutherland on Damages, pp. 216, 218.*

The theory of the rule is this: " Where there is a negligent delay in transportation, the thing which the owner does not receive, when he is entitled to it, is goods of their value at that time. The thing which he afterwards receives is goods of a value at a different time, which is not necessarily the same value. * * * If the market value of the goods is less when they are actually delivered than it was when they ought to have beeen delivered, the fall in the market value is not a cause, but an incident, or consequence, of the diminution of the intrinsic or merchantable

value of the goods, and evidence of the injury which the owner has suffered by the wrongful act of the carrier;" and the diminution in the market value is a real and actual loss of a portion of the real and intrinsic value, as much as a change for the worse in the quality of the goods. When the parties entered into the contract of shipment it is presumed that they had in contemplation this loss, as the probable result of the breach of it, and contracted with reference to it. Hence the law imposes on the carrier the duty to pay it as a compensation for the injury he has done by the failure to perform his contract. *3 Sutherland on Damages, p. 218; Hadley v. Baxendale, 9 Exch., 341.*

But there may be special circumstances under which the application of this rule would be unjust. As where the owner of the goods had made an advantageous sale of them, provided they were delivered within a certain time, and delivers them to a carrier to be transported to the place of delivery, and the carrier, through negligence, fails to deliver them at their destination in time, and the owner loses the benefit of his bargain. In this case, if the carrier was informed of the sale and its conditions, and the market value of the goods when and where they should have been delivered was less than the contract price, the result of the breach of the carrier's contract, which both parties would reasonably contemplate and contract in reference to, and for which the carrier would be liable, would be what the owner would lose by the failure to deliver in time, and that would be the difference between the contract price and the market value of the goods when delivered. But, on the other hand, if these special circumstances were wholly unknown to the carrier, the measure of damages would be as first stated. *3 Sutherland on Damages, p. 228; Simpson v. L. & N. W. Ry. Co., 1 Q. B. D., 274; Hadley v. Baxendale, 9 Exch., 341; Vicksburg, etc., R. R. Co. v. Raysdale, 46*

*Miss., 458; Gee v. L. & Y. Ry. Co., 6 H. & N., 211; Baldwin v. U. S. Telegraph Co., 45 N. Y., 744; Deming v. Railroad, 48 N. H., 455; Sisson v. C. & Q. R. R. Co., 14 Mich., 489.*

Appellee testified that he went to Texarkana fifteen or twenty times to inquire about these machines, and lost much time by reason thereof. He is not entitled to recover any damages on that account. The goods had been shipped from Texarkana to Cincinnati, and Texarkana was not the place to look for them. There was no necessity for incurring such loss. Such damage is not direct, but remote and contingent. *Ingledew v. Northern Railroad, 7 Gray, 86; Mississippi Railroad Co. v. Kennedy, 41 Miss., 679; Woodger v. G. W. Ry. Co., L. R. R., 2 C. P., 318.*

For the errors indicated the judgment of the court below is reversed, and this cause is remanded, with instructions to the court to grant appellant a new trial.