**CHICAGO, R. I. & P. RY. CO. v. MURPHY et al.**

No. 14616—Opinion Filed April 15, 1924.

Rehearing Denied Sept. 30, 1924.

Second Rehearing Denied Nov. 1, 1924.

**1. Carriers — Contracts as to Delivery — Damages for Breach.**

A watermelon dealer received a telegraphic order from New Orleans for 20 carloads of watermelons to be shipped from Rush Springs on the Rock Island Railroad in Oklahoma to New Orleans for a certain price per car, and delivery to be made on the L. & N. tracks in New Orleans. The order was shown to the station agent of the Rock Island Railroad in charge of the station at Rush Springs, and he was asked if he could make L. & N. delivery of the melons at New Orleans, and he replied that he could, and the dealer loaded 20 cars with melons and delivered them to the railroad in Rush Springs and received a bill of lading for each car, on which bill of lading was marked "L. & N. delivery." The cars were so routed by the Rock Island Railroad to New Orleans that they could not get L. & N. delivery and the purchaser rejected them and refused to receive them, whereby the shipper lost the sale of the melons and lost a lot of the melons from decay caused from delay in delivery, and brought this action to recover damages. Held, that the railroad company was liable for a failure to deliver the cars according to contract for the actual loss the shipper sustained by reason of the nondelivery.

**2. Same.**

Where a railroad company receives a shipment to be delivered at a certain place and fails to deliver same at that place, it is liable for such damages as the shipper actually sustains, by reason of the nondelivery to the designated place.

**3. Carriers—Extent of Liability for Shipment—Interstate Commerce.**

Where a shipment is an interstate shipment, the rights of the parties are determined by the acts of Congress, the bills of lading, and the common law. What is known as the Cummins Amendment to the Interstate Commerce Act of March 4, 1915, 38 Stat. at L. 1196, provides that in estimating the damages or injury to property shipped over the road of a common carrier it shall be liable for the full, actual loss, damage, or injury, notwithstanding any limitation of the amount of recovery or representations or agreement as to value in any receipt, or bill of lading, or any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner, or form, in which it is sought to be made is hereby declared to be unlawful and void.

**4. Same—Judgment for Damages Sustained.**

In this case, record examined, and held, that the case was fairly tried, and that the damages awarded by the jury are sustained by the evidence.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Caddo County; J. I. Phelps, Assigned Judge.

Action by A. N. Murphy and T. O. Murphy against the Chicago, R. I. & P. Ry. Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

This lawsuit arose out of the shipment by defendants in error of 20 odd carloads of watermelons delivered to the defendant for transportation at Rush Springs, Okla., a station on the line of the plaintiff in error's railway. The contract, with reference to the shipment of said watermelons, is stated in plaintiffs' petition as follows:

"That on or about the 20th day of August, 1921, these plaintiffs being in the business of purchasing and selling watermelons at the said town of Rush Springs, Okla., had orders from J. K. Lewis, Incorporated, a fruit and melon broker or commission man of New Orleans, La., to ship to him, for certain persons whose names are unknown to the plaintiffs, 19 cars of watermelons, for which such persons agreed to pay f. o. b. Rush Springs, Okla., $100 per car for 24 pound melons; $125 per car for 26 pound melons, and $140 per car for 28 pound melons, said orders being made upon condition that said melons should be delivered on the tracks of the Louisville & Nashville Railway Company at New Orleans, if possible, and with the understanding that these plaintiffs should advance the freight charges on said melons from Rush Springs, Oklahoma, to New Orleans, drawing a draft on the said J. K. Lewis, Incorporated, for the freight so advanced, and the price of the melons, to be paid upon their arrival upon the tracks of the said Louisville & Nashville Railway Company at New Orleans.

"That upon receiving such orders these plaintiffs went to the office of the defendant, at Rush Springs, Okla., and informed the defendant and its agent, in charge of its freight office at Rush Springs, to wit, R. E. Hayes, of all the terms and conditions of said order and especially of the condition that said cars of melons must be delivered on the tracks of the said Louisville & Nashville Railway Company at New Orleans, La., and informed the defendant that they wished to ship several cars provided delivery could be so made, and thereupon

the defendant informed these plaintiffs that it could and would transport and deliver. said melons upon the tracks of the said Louisville & Nashville Railway Company at New Orleans.

"That relying upon the promises and agreement of the defendant to transport and deliver said melons, these plaintiffs accepted said orders and so notified the said J. K. Lewis, Incorporated, and purchased, loaded, and delivered to the defendant, on its tracks, at Rush Springs, Okla., 22 cars of watermelons to be shipped to J. K. Lewis, Incorporated, and delivered upon the said Louisville & Nashville Railway Company's tracks at New Orleans, and advanced and paid the defendant the freight charges on said cars and the defendant accepted said melons aboard its cars at Rush Springs, and orally agreed to transport and deliver said melons upon the tracks of the said Louisville & Nashville Railway Company, at New Orleans."

That there was delivered under said contract 20 carloads of watermelons, and that 5 carloads were accepted by J. K. Lewis, Inc., at New Orleans, and there are only 15 carloads involved in this lawsuit. The petition then sets out the numbers of the cars accepted and the amount receipted therefor, but alleges that the plaintiff in error failed to make the delivery at New Orleans on the Louisville & Nashville Rairoad tracks, and said J. K. Lewis, Inc., refused to receive the 15 cars in controversy because they were not delivered on the Louisville & Nashville Railroad Company's tracks according to contract, but were placed on what is known as the Public Belt Railroad Commission tracks, which is not a watermelon market and practically inaccessible to the watermelon market, and —

"That by reason of the location at which said cars of melons were left, the said party to whom these plaintiffs shipped said melons rejected them and refused to pay the drafts aforesaid, which covered the purchase price of said melons and freight advanced by plaintiffs from Rush Springs, Okla., to New Orleans; and on account of the defendant's failure to deliver said melons at the point agreed upon as aforesaid, these plaintiffs were unable to force said party to accept and pay for said melons. including the freight aforesaid, and were unable to sell the melons in said cars, except the cars last above described, except as hereinafter stated, and were therefore damaged in the sum and manner hereinafter set out.

"That immediately after the plaintiffs received notice that said cars of melons were not placed upon the tracks of the said Louisville & Nashville Railway Company, at the place aforesaid, and that the same had been rejected, they went to New Orleans and found said melons at a point on the tracks of the Public Belt Railroad Commission, at such a distance from the said principal fruit and melon market that it was impossible to sell said melons, except at a great disadvantage and loss; but these plaintiffs proceeded with due diligence to dispose of and sell said melons, and did sell and dispose of the same; but on account of the delay caused by the defendant's failure to deliver said melons at the point agreed upon, some of said melons, the exact number of which is unknown to the plaintiffs, rotted, and the best price for which plaintiffs were able to sell said melons was and they did sell them for $2,139.14, after deducting demurrage paid, and the necessary expenses of handling the same at New Orleans, except the sum of $200, which plaintiffs were compelled to pay as a commission for the sale thereof."

Plaintiffs then allege that in going to and from New Orleans they were compelled to spend in railroad fare and other necessary expenses of the trip $255, and that the damages sustained by them on account of plaintiff in error's failure to transport and deliver said cars of melons to the place agreed upon by it, and other promises aforesaid, the defendants in error were damaged in the sum of $2,946.99, and prayed judgment for said amount. The bills of lading for each car had indorsed on them "Louisville & Nashville delivery." But it is conceded that none of said cars so shipped were delivered on the tracks of the Louisville & Nashville Railroad, and that for that reason the cars in controversy were rejected.

The evidence shows that the railroad company routed the cars in such a way that they could not be delivered on the Louisville & Nashville tracks, as agreed on; the evidence further shows that the melons arrived at New Orleans in good condition, but by reason of the nondelivery on the Louisville & Nashville tracks 15 cars were rejected and became greatly damaged before they could be disposed of. The witnesses who testified as to the damages were all citizens of New Orleans and familiar with the melon market, and testified that the Louisville & Nashville tracks was the watermelon market in New Orleans, and that the tracks were the private property of the Louisville & Nashville railroad, and that they would not permit other roads to deliver melons on their tracks, but required melons coming in to New Orleans to be delivered on its tracks to be routed in such a way as they would come in to New Orleans over the L. & N. tracks; the evidence shows that the difference in price of melons deliver-

ed on the Louisville & Nashville tracks and those delivered on the Public Belt tracks was something like $100 per car. The witnesses explained why there was this difference in the price of melons. The case was tried to the court and a jury, and the defendant requested certain instructions that were refused by the court and exceptions saved to the refusal, and the court delivered its own instructions to the jury, and the defendant, plaintiff in error, saved exceptions to only one of the instructions given, being instruction number two. After the argument of the case to the jury, the jury retired, and after deliberating rendered a verdict in favor of the plaintiffs in the sum of $2,250. with six per cent. from October 1, 1921. The plaintiff in error filed its motion for a new trial, which was overruled, and time taken to prepare and serve case-made, and in due time the case-made was served, settled, and signed, and the case appealed to this court.

C. O. Blake, W. F. Collins, W. R. Bleakmore, and A. T. Boys, for plaintiff in error.

A. J. Morris, for defendants in error.

Opinion by MAXEY, C. The plaintiff in error has assigned 10 specifications of error, but has grouped its arguments under five heads, namely:

(1) The bills of lading constituted entire contract between the plaintiffs and defendant.

(2) The rights of the parties are to be determined by the Acts of Congress, the bills of lading and the common law.

(3) The verdict is contrary to law and the evidence.

(4) The plaintiffs are not the real parties in interest and have no capacity to sue.

(5) The consignee waived the delivery specified in the bills of lading and neither consignee nor plaintiffs can recover.

Under the first proposition, plaintiff in error contends that the evidence establishes that neither the plaintiff, Murphy, nor the consignee, J. K. Lewis, Inc., wanted L. & N. team track delivery. Neither knew if J. K. Lewis, Inc., had a warehouse or industry located on the L. & N. tracks, and neither knew of the restrictions against the use of L. & N. team tracks by other lines entering New Orleans, and contends that Murphy did not ask for and Hayes did not promise L. & N. team track delivery. Counsel quotes from the testimony of Mr. Murphy to sustain this proposition, and because Murphy, who lived at Rush Springs. Okla.. did not know all about the L. & N. track

delivery, and that Hayes did not know anything about it, that the bills of lading issued by Hayes calling for L. & N. delivery did not mean anything. It is not strange that Mr. Murphy did not know of the restrictions, or rules, of the railroads in New Orleans. and he never would have asked for L. & N. delivery if the order from the J. K. Lewis, Inc., for the melons had not called for L. & N. delivery. He took this order to Mr. Hayes. the agent of the railroad company, and asked him if he could make L. & N. delivery at New Orleans, and Hayes told him he could. This question was asked Murphy: "Did you tell him what track you wanted the melons put on at New Orleans until after he read the message?" and he answered: "He made remarks to me about L. & N. track. I said, 'I don't suppose it matters what road they go on, just so they get L. & N. delivery.'" Again: "Did you know whether or not he had at that time a warehouse or industry on the L. & N. tracks?" "I did not." Mr. Hayes, the agent of the railroad company, told the shipper, Murphy. that they could make L. & N. delivery, and after Hayes had given Murphy the routing of the shipment, Murphy asked if he could make L. & N. delivery over that route, and Hayes told him that he could. The routing or shipment was discussed by Hayes and Murphy because Murphy wanted to be certain that they could make L. & N. delivery. Hayes was in a position where he ought to have known whether he could make L. & N. delivery over the route suggested, and Murphy depended entirely on what Hayes said about making L. & N. delivery over the route that he had suggested and over which the shipments were made. Mr. Hayes must have known the consignee, J. K. Lewis, Inc., considered L. & N. delivery an important part of the contract of shipment. It is perfectly natural for railroads to route shipments in such a way as to get as long a haul out of the shipment as possible. It is conceded in the testimony that this shipment could have been routed by Memphis and gone in to New Orleans on the L. & N. track and then there would have been no question about L. & N. delivery. It is shown that they would have to be hauled a longer distance by Memphis than they would over the lines they were shipped, but that was no concern of the railroad. The shippers wanted L. & N. delivery and the railroad agreed to give them L. & N. delivery and failed to do so. If the bills of lading constituted the entire contract between the shipper and the consignee and the railroad

company, then the railroad company failed to comply with the terms of its contract and are liable for damages. unless the consignee waived L. & N. delivery. After the shipments reached New Orleans, the shipper, Murphy, got notice that the L. & N. railroad would not receive the shipment, and that the purchaser, J. K. Lewis Inc., refused to receive them without L. & N. delivery. Mr. Murphy, realizing that the melons were decaying and would become worthless in a short time, went to New Orleans, and after seeing the connecting road that received the melons from the defendant Rock Island, and finding out that there was no chance to make the L. & N. delivery, they let the railroad set the cars on what is known as the Public Belt Track and sold what they could from there. As before stated, five of the cars were delivered and no claim is made for any damages to these cars, but on the 15 cars which were refused, Mr. Murphy and J. K. Lewis, Inc., used every effort they could to realize every dollar out of the shipment that could be realized, and the defendant railroad company certainly cannot complain of this. They are only claiming the actual loss and they are entitled to recover this either under the federal act or common law rule. Counsel for plaintiff in error have cited a large number of authorities to sustain the first proposition. We have no fault to find with the authorities, but we do find fault with their application to the facts in this case. The second proposition is, that the rights of the parties are to be determined by the acts of Congress, the bills of lading, and the common law. We think this proposition is well stated and there is little room for controversy over it. The shipment in question is an interstate shipment over which Congress has exclusive jurisdiction, and bills of lading and common law. in so far as they do not conflict with the acts of Congress, are controlling. But in cases involving interstate shipments, the act of Congress upon the subject-matter must always be consulted. We think counsel, however, in his effort to apply certain cases to the conditions here have gone outside of the record, for plaintiff in error contends that J. K. Lewis, Inc., wanted L. & N. team track delivery, instead of L. &. N. delivery, and withheld this fact from both the plaintiffs and defendant. We do not think the record supports this contention. The L. & N. team track was constructed by the L. & N. for its own private use for the use of its customers whose fruits and melons came in over its own tracks. The team

tracks were evidently an inducement to shippers to have their melons come in over the L. & N. It appears from the record that there were some proceedings had before the Interstate Commerce Commission to compel the L. & N. to receive melons and other fruits on its tracks, but that the Interstate Commerce Commission held that the L. & N. had a right to build its private tracks for delivery of freight that came in over its own line, and that freight routed over other roads could not be delivered on the L. & N. tracks. That question seems to have been settled long prior to this lawsuit, and the defendant must, or should, have known of that decision before it received the shipment in question. So we cannot find anything in the Interstate Commerce Act that will bar the plaintiff from recovery under the facts in this case. What is known as the Cummins Amendment of March 4, 1915, 38 Stat. at L. 1196, provides that the carrier affected by that Act shall issue a bill of lading and shall be liable to the lawful holder of it:

"For any loss, damage, or injury to such property * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier * * * from the liability hereby imposed." and further that the carrier "shall be liable * * * for the full actual loss, damage, or injury * * * notwithstanding any limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or any contract, rule, regulation. or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void."

It will be observed that under this amendment the carrier shall be liable for the full actual loss, damages, or injury, and that any attempt to limit the liability to less than the full actual loss is unlawful and void. We think the judgment in this case based on the verdict of the jury is for a less amount than the jury could have found under the testimony and the railroad company has no just cause for complaint.

The next proposition is that the verdict is contrary to law and the evidence, and under this, counsel for plaintiff in error takes up and discusses instruction number two given by the court, which is as follows:

"In this case, gentlemen of the jury, if you find that, if, upon receiving the telegraphic order for the watermelons, in question. the plaintiff took the same to defend-

ant's agent at Rush Springs, and showed it to him, and said agent was then informed of the terms and condition of said order, including the price and place of delivery of said melons, and if you find that, with such knowledge, the defendant's said agent agreed to transport said melons, and deliver the same on the L. & N. railroad tracks in the city of New Orleans, and that the plaintiff relying upon said agreement, accepted said order and agreed to load and ship said melons for such purpose, it was then the duty of the defendant to so route said melons as to insure their delivery upon said L. & N. tracks at New Orleans; and you are further instructed that, if the defendant failed to so route said melons as to secure their delivery on said L. & N. tracks, and that by reason thereof the plaintiffs sustained a loss and were damaged, then and in that event you should find for the plaintiffs, and allow them the difference between the contract price, f. o. b. Rush Springs, of the melons so contracted plus freight prepaid, and the net amount received therefor; and for the two cars shipped to be sold on arrival, you should allow the plaintiffs the difference between the net amount, if any, received for said cars and the amount they would have brought had they been delivered upon said L. & N. tracks; you snould also allow the plaintiffs all extra freight paid by them for the time lost and all necessary expenses in going to and from New Orleans to care for said melons, with interest on the whole amount allowed at the rate of 6 per cent. per annum from October 1, 1921."

We cannot see the objections urged to this instruction by counsel for plaintiff in error, and taken with the other instructions given by the court, we think it fairly presents the law of this case.

There is another amendment to the Interstate Commerce Act, known as the Carmack Amendment, and counsel cites the case of Pa. Ry. Co. v. Olivit Bros., 243 U. S. 574, where the court had under consideration both the Cummins Amendment and the Carmack Amendment. We can see nothing in that case that would justify a refusal to allow damages in this case, but are inclined to think that it supports the contention of defendant in error. The following authorities, we think, are applicable to the case at bar and support the judgment of the trial court: Chicago, M. & St. Ry. Co. v. McCaull Dinsmore Co., 260 Fed. 835; 10 Corpus Juris, 324, sec. 469; St. Louis, etc., Ry. Co. v. Mudford, 48 Ark. 502, 3 S. W. 814; Ill. Cent. Ry. Co. v. Cobb, 64 Ill. 128; Ill. Cent. R. Co. v. Southern Seating Co., 104 Tenn. 568, 58 S. W. 303; Missouri Pac. Ry. Co. v. Peru-Vanzandt Implement Co. (Kan.) 85 Pac. 408; Demaing v. Grand Trunk R. Co., 48 N. H. 455, 2 Am. Rept. 267; Hutchinson

on Carriers, sec. 772. Under the facts in this case, the undertaking of the defendant railroad company to deliver the melons upon the L. & N. track was a specific undertaking for it was fully informed and knew that the melons were contracted for a certain price per car, f. o. b. Rush Springs, and it also knew that in the contract of sale L. & N. delivery was to be made, a condition which, if not complied with, would authorize the purchaser to reject the melons.

What was the plaintiffs' full actual loss? They lost the contract price of the melons, plus the freight paid, less the amount received for the melons at New Orleans, and this deduction would leave their full actual loss. This is what the court told the jury in its instructions, and we see no error in the instructions The next proposition urged by plaintiff in error is that plaintiffs were not the real party in interest and had no capacity to sue. We do not think this proposition is entitled to very serious consideration. The plaintiffs in this case who brought this suit, in our judgment, were the real party in interest that shipped the cars over defendant's road from Rush Springs to New Orleans, and on account of the railroad company's failure to furnish L. & N. delivery, the cars were rejected. Plaintiffs had already furnished the melons; they had already prepaid the freight, and their melons had been rejected. They were not compelled to wait and run the risk of a lawsuit, with either the railroad company or with J. K. Lewis, Inc., the consignee, but they did what any reasonable man would have done. After the melons were rejected, they endeavored to realize all they could out of them and apply on the melons. This is something that the railroad company cannot complain of, as, if the railroad company was liable, it tended to reduce the amount of its liability, and if it was not liable, it was a matter that did not affect it one way or the other The only result of the plaintiffs taking charge of the melons and getting what they could out of them was to reduce the liability for damages on whoever should be adjudged liable. The test to apply in a case of this kind is, Would the satisfaction of the judgment recovered by plaintiffs be a complete acquittance to the railroad company? If so, then the plaintiff has a right to maintain the action and the defendant railroad company has nothing to complain of. Under this head there are some objections made to the refusal of the court to give certain instructions asked by the defendant railroad company. We have

read the instruction requested and the entire charge of the court, and we think the jury was properly instructed on the law of the case, and that there was no error in refusing the instructions requested nor in giving the instructions given. The whole case summed up is simply this: The railroad company received the melons at Rush Springs, Okla., and their agents knowing that the melons were ordered routed so that they could make L. & N. delivery and that they routed them over a line that could not make that delivery and they must suffer the consequences. We think the judgment of the trial court is right, and should, in all things, be affirmed.

By the Court: It is so ordered.